RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206
File Name: 05a0105p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

———————————

PENNY/OHLMANN/NIEMAN, INC. et al.,
　　　　　　　　　　*Plaintiffs-Appellants,*

　　　*v.*

　　　　　　　　　　　　　　　　No. 03-3812

MIAMI VALLEY PENSION CORP. et al.,
　　　　　　　　　　*Defendants-Appellees.*

>

Appeal from the United States District Court
for the Southern District of Ohio at Dayton.
No. 02-00156—Thomas M. Rose, District Judge.

Submitted: September 21, 2004

Decided and Filed: March 4, 2005

Before: KEITH, MOORE, and GILMAN, Circuit Judges.

———————————

**COUNSEL**

**ON BRIEF:** Roger Makley, COOLIDGE, WALL, WOMSLEY & LOMBARD, Dayton, Ohio, Nicole M. Ruhenkamp, STRAUSS & TROY, Cincinnati, Ohio, for Appellants. John Matthew Cloud, ROGERS & GREENBERG, Dayton, Ohio, Chad A. Readler, JONES DAY, Columbus, Ohio, for Appellees.

———————————

**OPINION**

———————————

　　　KAREN NELSON MOORE, Circuit Judge. Plaintiffs-Appellants Penny/Ohlmann/Nieman, Inc., Penny/Ohlmann/Nieman, Inc. Employee Stock Ownership Plan, and Penny/Ohlmann/Nieman, Inc. Employee Savings Plan (collectively "PONI") appeal the dismissal of their state-law claims against Defendants-Appellees, Miami Valley Pension Corp. ("MVP") and National City Corp. d/b/a/ National City Bank ("NCB") (collectively "Appellees"). PONI argues that the district court erred in adopting the magistrate judge's determination that PONI's state-law claims against the Appellees are preempted by the Employee Retirement Income Security Act of 1974 ("ERISA"). The Appellees argue in the alternative that either the claims are preempted or the district court was correct to grant their motion for judgment on the pleadings because PONI has not alleged any cognizable damages. Upon review, we conclude that though PONI's claims against NCB are preempted by ERISA, the claims against MVP are not. Furthermore, PONI has alleged sufficient cognizable harm to preclude a judgment on the pleadings with respect to its claim against MVP. Therefore, the district court's grant of judgment on the pleadings is **AFFIRMED** with regard to

1

NCB and **REVERSED** with regard to MVP. We **REMAND** the case to the district court for further proceedings consistent with this opinion.

## I. BACKGROUND

Penny/Ohlmann/Nieman, Inc. (the "Employer") has utilized three different retirement plans for its employees over the years: a defined benefit pension plan ("Defined Benefit Plan"), an employee stock ownership plan ("ESOP"), and a savings plan ("Savings Plan"). The Employer established the Defined Benefit Plan on June 20, 1970. MVP served as the record keeper and the broker of the life insurance policies held as assets for the Defined Benefit Plan. On June 1, 1975, the Employer established the ESOP, for which MVP has provided record-keeping services since its inception. Lastly, effective July 1, 1985, the Employer established the Savings Plan. NCB, and its predecessor, The First National Bank, have provided record-keeping, trust, and commercial-banking services to the Savings Plan since it was established.

The Defined Benefit Plan was terminated on June 30, 1990, at which time all employees except one elected to cash out the insurance portion of their accrued benefits. The one employee, who was a "key" employee, as defined in the Internal Revenue Code ("I.R.C.") § 416(i)(1), elected to roll the value of the insurance policy (the "Key Employee Insurance Policy") into the Savings Plan. In 1998, during a comprehensive review of the operations of both the Savings Plan and the ESOP, the Employer discovered that the cash value of the Key Employee Insurance Policy rolled over from the Defined Benefit Plan to the Savings Plan had been incorrectly valued by NCB at one dollar ($1.00). When the Key Employee Insurance Policy was properly valued, the Employer discovered that both the ESOP and Savings Plan were in violation of the I.R.C.'s top-heavy limitations for the period of 1991 through 1998.

A plan is considered top-heavy when too great a percentage of the assets are dedicated to key employees, defined as officers earning above a specified compensation level or employees with high salaries and sufficient ownership interests. I.R.C. § 416(i)(1)(A). The I.R.C. seeks to protect non-key employees by ensuring that a minimum amount of the assets from an employer's pension plan are dedicated to them. Specifically, the I.R.C. defines a top-heavy plan as one in which "the aggregate of the accounts of key employees under the plan exceeds 60 percent of the aggregate of the accounts of all employees under such plan." I.R.C. § 416(g)(1)(A)(ii). If a plan is determined to be top-heavy, it must meet vesting and minimum benefit/contribution requirements. I.R.C. § 416(a). For a defined contribution top-heavy plan, the minimum employer contribution amount is 3% of the compensation for each of the non-key employee participants. I.R.C. § 416(c)(2)(A). The I.R.C. also provides for the aggregation of the top-heavy requirements when an employer has multiple plans in effect. I.R.C. § 416(g)(2).

As part of their record-keeping responsibilities, MVP and NCB were required to perform top-heavy testing to ensure that the ESOP and Savings Plan complied with the I.R.C. Both MVP and NCB were aware of the existence of the other plan and their respective record-keeping responsibilities. Both the ESOP and the Savings Plan documents contain provisions describing the top-heavy rules of I.R.C. § 416 as well as language requiring coordination of the top-heavy minimum-contribution requirements in the event that the Employer sponsors more than one plan. In addition, during the period from July 1, 1990 to June 30, 1998, Dave Smeltzer, a representative of NCB responsible for the Savings Plan, orally advised the Employer that the Savings Plan did not have a top-heavy problem.

Since it was unaware of the top-heavy status of the two plans, the Employer failed to make any contributions to alter the top-heavy status as required by the I.R.C. during the years 1991-1998. On May 21, 1999, the Employer advised the Internal Revenue Service ("IRS") that the ESOP and

the Savings Plan were in violation of the top-heavy contribution requirements. The IRS did not disqualify either plan, but instead revised the Employer's contributions and fined the Employer $5,000. The Employer was required to make a minimum contribution of $137,087.17. The Employer also incurred an additional $35,000 in service fees, interest, and legal fees pursuing the settlement with the IRS and reimbursement from NCB and MVP. Thus, the total amount PONI was required to pay as a result of the top-heavy error was $177,087.17.

PONI brought suit in 2002, alleging that NCB breached its fiduciary responsibility as a trustee under ERISA § 404, 29 U.S.C. § 1104. PONI also alleged that NCB and MVP materially breached their respective service contracts by (1) utilizing the obviously improper $1.00 valuation of the Key Employee Insurance Policy; (2) not recognizing the improper valuation during the annual top-heavy testing for each respective plan; and (3) failing to coordinate the top-heavy testing of the Savings Plan and the ESOP. Lastly, PONI alleged that NCB and MVP negligently misrepresented their knowledge of the applicable law and their ability to operate the respective plans in conformity with the law, the terms of the plan documents, and industry standards. PONI sought damages of $161,513.00.

On April 23, 2003, the district court granted the Appellees' motion for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. In its ruling, the district court adopted the magistrate judge's report and recommendations in its entirety. In the report, the magistrate judge found that PONI was not entitled to any relief under ERISA and that its state-law claims were preempted. PONI appeals only with regard to the state-law claims.

## II. ANALYSIS

### A. Standard of Review

We review a motion for judgment on the pleadings pursuant to Rule 12(c) under "the same *de novo* standard applicable to a motion to dismiss under Rule 12(b)(6)." *Ziegler v. IBP Hog Market, Inc.*, 249 F.3d 509, 511-12 (6th Cir. 2001). "In reviewing the motion, we must construe the complaint in the light most favorable to the plaintiff, accept all of the complaint's factual allegations as true, and determine whether the plaintiff undoubtedly can prove no set of facts in support of his claim that would entitle him to relief." *Id.* at 512. We have noted, however, that "we need not accept as true legal conclusions or unwarranted factual inferences." *Mixon v. Ohio*, 193 F.3d 389, 400 (6th Cir. 1999).

### B. Breach-of-Contract Claims

The first issue PONI raises on appeal is that the district court erred in finding that its breach-of-contract claims against NCB and MVP were preempted by ERISA. Upon review, we conclude that PONI's state-law breach-of-contract claim against NCB, the trustee of the Savings Plan, is preempted under ERISA § 514(a), but its claim against MVP, a non-fiduciary service provider, is not.

ERISA preempts "any and all State laws insofar as they may now or hereafter relate to any employee benefit plan." ERISA § 514(a), 29 U.S.C. § 1144(a). The United States Supreme Court has dealt with the "opaque language in ERISA's § 514(a)" approximately twenty times over the last twenty-four years. *See De Buono v. NYSA-ILA Med. & Clinical Servs. Fund*, 520 U.S. 806, 808-09 & n.1 (1997) (noting the numerous attempts by the Court to define the boundaries of ERISA preemption). In its earlier cases, the Supreme Court noted that "[t]he pre-emption clause is conspicuous for its breadth," *FMC Corp. v. Holliday*, 498 U.S. 52, 58 (1990), and "deliberately expansive, and designed to establish pension plan regulation as exclusively a federal concern," *Pilot*

*Life Ins. Co. v. Dedeaux*, 481 U.S. 41, 46 (1987) (internal quotation omitted). More recently, however, the Supreme Court has narrowed the preemptive scope of ERISA, moving away from the broadest meaning of the provision. The Court has stated that the phrase "insofar as they . . . relate" contains words of limitation that were purposefully written into the statute. *N.Y. State Conference of Blue Cross & Blue Shield Plans v. Travelers Ins. Co.*, 514 U.S. 645, 655 (1995). If the term "relate to" was allowed to reach to its most logical extension, "pre-emption would never run its course." *Id.*; *see also Cal. Div. of Labor Standards Enforcement v. Dillingham Constr., N.A.*, 519 U.S. 316, 335 (1997) (Scalia, J. concurring) (noting that "applying the 'relate to' provision according to its terms was a project doomed to failure, since, as many a curbstone philosopher has observed, everything is related to everything else"). The effect of such a broad reading "would be to read Congress's words of limitation as mere sham, and to read the presumption against pre-emption out of the law whenever Congress speaks to the matter with generality." *Travelers Ins. Co.*, 514 U.S. at 655.

Therefore, in interpreting ERISA's preemption clause, a court "must go beyond the unhelpful text and the frustrating difficulty of defining its key term, and look instead to the objectives of the ERISA statute as a guide to the scope of the state law that Congress understood would survive." *Id.* at 656. The purpose of ERISA preemption was to avoid conflicting federal and state regulation and to create a nationally uniform administration of employee benefit plans. Thus, ERISA preempts state laws that (1) "mandate employee benefit structures or their administration;" (2) provide "alternate enforcement mechanisms;" or (3) "bind employers or plan administrators to particular choices or preclude uniform administrative practice, thereby functioning as a regulation of an ERISA plan itself." *Coyne & Delany Co. v. Selman*, 98 F. 3d 1457, 1468 (4th Cir. 1996) (outlining the three categories of state laws recognized in *Travelers* that are preempted by ERISA) (internal citations omitted). Congress did not intend, however, for ERISA "to preempt traditional state-based laws of general applicability that do not implicate the relations among the traditional ERISA plan entities, including the principals, the employer, the plan, the plan fiduciaries, and the beneficiaries." *LeBlanc v. Cahill*, 153 F.3d 134, 147 (4th Cir. 1998).

Since the *Travelers* decision, the Supreme Court has reiterated the approach of looking to the objectives of ERISA to guide its preemption decisions. *See, e.g., Dillingham Constr.*, 519 U.S. at 325 (finding that California's prevailing wage law, which has only an indirect economic effect on employee benefit plans, is not preempted by ERISA); *De Buono*, 520 U.S. at 815-16 (upholding state tax on health care facilities operated by an ERISA fund). We too have followed the *Travelers* approach in applying ERISA preemption in our recent cases. In *Smith v. Provident Bank*, 170 F.3d 609, 615-16 (6th Cir. 1999), we held that an ERISA plan's state-law claims against a trustee were preempted because Congress established the exclusive means by which fiduciary duties would be enforced. We noted, however, that where "an ERISA plan's relationship with another entity is not governed by ERISA, it is subject to state law." *Id.* at 617. Similarly, in *Marks v. Newcourt Credit Group, Inc.*, 342 F.3d 444, 453 (6th Cir. 2003), we found that a breach-of-contract claim was not preempted where the conduct at issue related to the "employment contract irrespective of the plan" even though resolution of the claim affected the plaintiff's right to plan benefits. Though we have yet to address the issue specifically, other courts of appeals have followed a similar approach and held that ERISA does not preempt state-law claims brought against non-fiduciary service providers in connection with professional services rendered to an ERISA plan. *See, e.g., Gerosa v. Savasta & Co.*, 329 F.3d 317, 330 (2d Cir.) (concluding that ERISA does not preempt plan's state-law claim against an actuary which resulted in severe under-funding of ERISA plan), *cert. denied*, 540 U.S. 967 (2003) and *cert. denied*, 540 U.S. 1074 (2003); *Ariz. State Carpenters Pension Trust Fund v. Citibank*, 125 F.3d 715, 724 (9th Cir. 1997) (concluding that a plan could bring a state-law claim for breach of custodial agreement against a bank as non-fiduciary service provider); *Coyne & Delany Co.*, 98 F.3d at 1466, 1472 (holding that state malpractice claims against insurer for negligently failing to obtain replacement insurance plan was not preempted); *Airparts Co. v. Custom*

*Benefit Servs.*, 28 F.3d 1062, 1066 (10th Cir. 1994) (concluding that trustee's common-law suit against outside financial consultant is not preempted).

Applying these principles to this case, we conclude that the magistrate judge erred in his analysis of PONI's state-law claims against NCB and MVP. The magistrate judge found that because PONI's breach-of-contract claims arise out of obligations relating to the servicing of ERISA plans, the claims against both NCB and MVP are preempted. The mere fact that an employee benefit plan is implicated in the dispute, however, is not dispositive of whether the breach-of-contract claims are preempted. PONI argues that its state-law claims relate solely to the Appellees' record-keeping services and should be viewed separately from the plans themselves. With regard to the claim against NCB, we find that argument to be unpersuasive.

NCB serves as trustee to the Savings Plan and also provides record-keeping and commercial-banking services. NCB's record-keeping obligations arise out of the Savings Plan itself, which contains provisions outlining the top-heavy rules and requiring coordination of top-heavy testing among multiple plans.[1] In the prior cases in which the courts have found that ERISA does not preempt state-law claims against non-fiduciary service providers, a service agreement or contract *separate and distinct* from the ERISA qualified plan served as the basis for the claim. *See Marks*, 342 F.3d at 453 (allowing suit for breach of employment contract); *Gerosa*, 329 F.3d at 319 (permitting suit on actuarial contract); *Ariz. State Carpenters*, 125 F.3d at 718 (allowing claim for breach of custodial agreement); *Coyne & Delany*, 98 F.3d at 1471 (permitting malpractice claim on contract to design benefit plan); *Airparts Co.*, 28 F.3d at 1066 (permitting suit on a consulting contract). In this case, by contrast, all of NCB's obligations arise from the plan itself, and thus the breach-of-contract claim is necessarily a claim that a fiduciary breached the terms of the ERISA plan.

PONI argues that even if the contract upon which it is suing NCB is the ERISA plan, preemption does not apply to a state-law breach-of-contract claim for NCB's failure to perform its non-fiduciary duties under the plan. PONI correctly contends that an entity may serve both in a fiduciary and non-fiduciary capacity, because fiduciary status under ERISA turns on function rather than form. *Pegram v. Herdrich*, 530 U.S. 211, 225-26 (2000). Indeed, where the alleged conduct by the fiduciary is "entirely unrelated to and outside the scope of [the fiduciary's] duties under the plan or in carrying out the terms of the plan," courts have found that ERISA's core objectives are not implicated and state-law claims may proceed. *Darcangelo v. Verizon Communications, Inc.*, 292 F.3d 181, 193 (4th Cir. 2002); *see also Dishman v. UNUM Life Ins. Co.*, 269 F.3d 974, 984 (9th Cir. 2001) (holding that ERISA does not provide fiduciaries "with blanket immunity from garden variety torts which only peripherally impact daily plan administration"). In this case, however, because the contract at issue in the breach-of-contract claim is the ERISA plan itself, the claim is clearly preempted. *Darcangelo*, 292 F.3d at 194. ERISA's civil enforcement scheme does not limit claims to only those of a fiduciary nature, but rather permits "a participant, beneficiary, or fiduciary . . . to enjoin *any* act or practice which violates . . . the terms of the plan." ERISA § 502(a)(3)(A), 29 U.S.C. § 1132(a)(3)(A) (emphasis added). Therefore, a state-law cause of action to enforce the terms of the contract necessarily conflicts with Congress's "carefully crafted and detailed enforcement scheme." *Mertens v. Hewitt Assocs.*, 508 U.S. 248, 254 (1993). Because the breach-of-contract claim would create an alternate enforcement mechanism for NCB's performance under the ERISA plan, we conclude that the claim is preempted under § 514(a).

---

[1] PONI argues that there was a separate oral service-agreement between itself and NCB to provide record-keeping obligations apart from the plan. That statement is at odds with the original complaint, however, which states that the Savings Plan contained provisions describing the top-heavy rules and requiring coordination of top-heavy testing among multiple plans. Joint Appendix ("J.A.") at 13 (Complaint at 5).

By contrast, PONI's arguments with regard to its breach-of-contract claim against MVP are more compelling. First, MVP does not serve as a fiduciary to either the Defined Benefit Plan, the Savings Plan, or the ESOP.[2] MVP's sole relationship with PONI is as a non-fiduciary service provider, charged with performing record-keeping services for the ESOP.[3] Second, the state-law cause of action does not fall within any of the three recognized categories which courts have generally found ERISA preemption. *Coyne & Delany Co.*, 98 F.3d at 1468. Specifically, PONI's suit against MVP will not result in mandating a specific employment benefit structure, providing an alternate enforcement mechanism of an ERISA plan, or regulating an ERISA plan itself. Thus, the sole remaining issue is whether the breach-of-contract claim would implicate "relations among the traditional ERISA plan entities." *LeBlanc*, 153 F.3d at 147.

Traditional ERISA plan entities are defined as "the principals, the employer, the plan, the plan fiduciaries and the beneficiaries." *Id.*; *see also Firestone Tire & Rubber Co. v. Neusser*, 810 F.2d 550, 556 (6th Cir. 1987). While PONI is certainly a traditional ERISA plan entity, MVP is clearly not. MVP's sole responsibility is to provide record-keeping services for PONI pursuant to the parties' oral agreement. We have previously stated that "[w]hen an ERISA plan's relationship with another entity is not governed by ERISA, it is subject to state law." *Provident Bank*, 170 F.3d at 617. Specifically, the ERISA Plan "acquire[s] the same rights of action under state law as other entities not created by ERISA." *Id.*; *see also Gen. Am. Life Ins. Co. v. Castonguay*, 984 F.2d 1518, 1522 (9th Cir. 1993) (holding that "ERISA doesn't purport to regulate those relationships where a plan operates just like any other commercial entity").

MVP argues that even if it is not a principal ERISA entity itself, PONI's state-law claim should still be preempted because it would "clearly affect relations between principal ERISA entities." MVP Br. at 29.[4] We find this argument to be wholly unpersuasive. PONI's breach-

---

[2] *See* 29 C.F.R. § 2509.75-8 (clarifying that one who performs the administrative function of maintaining service and employment records for an employee benefit plan but otherwise does not have discretionary control over the management of the plan is not a fiduciary).

[3] MVP argues in its brief that no written agreement existed between the two parties during the years in which the improper top-heavy testing occurred (1991-1998) and therefore, because the services were provided pursuant to the ESOP plan, the claim should be preempted. MVP Br. at 22. This argument is unpersuasive. Regardless of whether a written contract existed between the two parties, MVP does acknowledge that it performed record-keeping services for PONI's various plans from 1970 until the present, and thus, PONI may bring a breach-of-contract claim based on the parties' oral agreement.

[4] In support of this argument, MVP cites to the broad language in *Ingersoll-Rand Co. v. McClendon*, in which the Supreme Court held preemption was appropriate because "there simply is *no* cause of action if there is no plan." 498 U.S. 133, 140 (1990). In *Ingersoll-Rand*, the Court was addressing whether a state wrongful-discharge statute could be construed to extend to terminations motivated by an employer's wish to avoid making pension contributions on behalf of an employee. *Id.* at 136. Thus, both the existence of a pension plan and a pension-defeating motive behind the termination were critical elements to the state cause of action. *Id.* at 140. The Court reasoned that to allow the state cause of action would lead to "different substantive standards applicable to the same employer conduct, requiring the tailoring of plans and employer conduct to the peculiarities of the law of each jurisdiction. Such an outcome is fundamentally at odds with the goal of uniformity that Congress sought to implement." *Id.* at 142. Moreover, the offensive conduct was already prohibited by ERISA, and thus the state statute would create an alternate enforcement mechanism. *Id.* at 145. Central to the Court's conclusion in *Ingersoll-Rand* was the fact that the state law in question was *not* "a generally applicable statute that makes no reference to, or indeed functions irrespective of, the existence of an ERISA plan." *Id.* at 139.

By contrast, PONI's breach-of-contract claim against MVP neither conflicts with ERISA's goal of national uniformity of the administration of employee benefit plans nor creates an alternate enforcement mechanism. Ohio's contract law is a traditional state-based law of general applicability that neither directly references ERISA plans nor relies on the existence of such plans to operate. PONI's claim is limited to MVP's obligation to provide record-keeping services to the ESOP plan and does not directly touch upon the operation of the plan itself. Therefore, we conclude that

of-contract claim "will not affect the structure, the administration, or the type of benefits provided by the plan." *Airparts Co.*, 28 F.3d at 1066. Moreover, unlike the claim against NCB, PONI's claim against MVP is not "based on any rights under the plan; there is no allegation that any of the plan's terms have been breached. Nor is there any effort to enforce or modify the terms of the plan." *Id.* MVP was simply a third-party service provider and its record-keeping services were no different than the consulting, custodial, actuarial, or legal services provided to ERISA plans in which the courts have found state-law causes of action to lie.[5] Indeed, permitting the suit to go forward would serve to strengthen the ERISA system. Allowing plans to contract with third-party service providers and resort to traditional contract remedies in case of breach helps to ensure "the financial integrity of the plans Congress intended to protect." *Gerosa*, 329 F.3d at 329.[6]

The Appellees' final argument in favor of preemption is that PONI is attempting, through its state-law cause of action, to recover plan benefits. Specifically, "PONI *is* seeking benefits owed to non-key employees as a result of the Savings Plan's top-heavy status." NCB Br. at 36. We have stated that "[i]t is not the label placed on a state law claim that determines whether it is preempted, but whether in essence such a claim is for the recovery of an ERISA plan benefit." *Cromwell v. Equicor-Equitable HCA Corp.*, 944 F.2d 1272, 1276 (6th Cir. 1991), *cert. dismissed*, 505 U.S. 1233 (1992). A suit against a non-fiduciary to recover plan benefits seeks to create an alternative to ERISA's enforcement mechanism, and accordingly is preempted under § 514(a). Not every cause of action which mentions plan benefits, however, requires preemption. We have noted that reference to plan benefits may be "simply a reference to specific, ascertainable damages [the plaintiff] claims to have suffered as a proximate result of [the defendant's conduct]." *Wright v. Gen. Motors Corp.*, 262 F.3d 610, 615 (6th Cir. 2001). In *Wright*, the cause of action was not "claiming wrongful withholding of ERISA covered plan benefits," but rather "discrimination and retaliation resulting in damages, one component of which is a sum owed under the provision of the [ERISA] plan." *Id.* Similarly, in *Marks*, we held that an employee was not preempted from bringing a claim for breach

---

*Ingersoll-Rand* does not affect our analysis. *See also Gerosa*, 329 F.3d at 325 (holding that *Ingersoll-Rand* does not preclude state-law cause of action against an actuary); *Coyne & Delany Co.*, 98 F.3d at 1472 (holding that *Ingersoll-Rand* does not require preemption of state-law malpractice claim against insurers).

[5] MVP makes the claim that "[a]lmost all Courts of Appeals that have considered the question agree that state causes of action asserted against non-fiduciaries are preempted by ERISA." MVP Br. at 26. The three circuit court cases which MVP cites, however, involve suits brought by employees to recover plan benefits. *See Custer v. Pan Am. Life Ins. Co.*, 12 F.3d 410, 418 (4th Cir. 1993) (finding that an employee's suit against administrator and underwriter for denied medical benefits was preempted); *Gibson v. Prudential Ins. Co.*, 915 F.2d 414, 417 (9th Cir. 1990) (holding that an employee's suit against agent for denied disability benefits was preempted); *Howard v. Parisian, Inc.* 807 F.2d 1560, 1565 (11th Cir. 1987) (holding that an employee's claim against plan administrator for denied benefits is preempted). We have previously stated that "state law claims [which go] to the very heart of issues within the scope of ERISA's exclusive regulation . . . [are] clearly preempted." *Lion's Volunteer Blind Indus., Inc. v. Automated Group Admin., Inc.*, 195 F.3d 803, 808 (6th Cir. 1999) (internal quotation marks and citation omitted). This principle holds true even where the suit is brought against a non-fiduciary. *Provident Bank*, 170 F.3d at 615. Parties may not circumvent the ERISA statutory scheme through state-law causes of action against non-fiduciaries to recover plan benefits.

By contrast, the courts of appeals that have addressed the issue have held that state-law claims against non-fiduciaries seeking to recover damages on professional service contracts are not preempted by ERISA. *See, e.g., Gerosa*, 329 F.3d at 330; *Ariz. State Carpenters*, 125 F.3d at 724; *Coyne & Delany Co.*, 98 F.3d at 1466; *Airparts Co.*, 28 F.3d at 1066.

[6] MVP cites to a district court case from this circuit, in which the court concluded that ERISA preempts a breach-of-contract claim of a separate service agreement providing for the administration of a plan. *Flanagan Lieberman Hoffman & Swaim v. Transamerica Life & Annuity Co.*, 228 F. Supp. 2d 830, 847-48 (S.D. Ohio 2002). In that case, the district court found that the service agreement was governed by the rules of ERISA. *Id.* at 848. In its opinion, the district court neither explained why nor cited any case to support that proposition. Therefore, we do not find this case to be persuasive. Moreover, *Flanagan* is inapposite because in that case the service provider also served as a "[p]lan provider," which the district court held was an ERISA principal. *Id.*

of his employment contract where the damages he sought were benefits to which he would have been entitled. 342 F.3d at 453. Once again, we noted that "a close reading of [the] complaint reveals that the reference to plan benefits was only a way to articulate specific ascertainable damages." *Id.* (internal quotation marks and citation omitted).

In this case, MVP entered into a contract with PONI to provide record-keeping services for the ESOP plan. The breach of contract resulted in substantial harm to PONI, for which it should be able to recover damages. Specifically, because of the failure properly to perform top-heavy testing, PONI was forced to pay approximately $177,087.17. In addition to the top-heavy contribution of $137,087.17, that amount includes the $5,000 fine paid to the IRS as well as $35,000 in costs and fees associated with bringing the plans into compliance. In this suit, PONI is seeking $161,513 in damages, of which PONI acknowledges a large portion is attributable to the top-heavy contribution.[7] Upon review of the pleadings, we conclude that PONI's damage request is not seeking recovery of denied plan benefits or contributions, but rather compensatory damages proximately caused by the breach of contract. The inclusion of the top-heavy contribution is simply to reference "specific, ascertainable damages" suffered as a result of the breach, which is not the equivalent of an ERISA claim under § 502(a)(1)(B) to recover plan benefits.

In sum, we affirm the district court's ruling that ERISA preempts the claim against NCB, the trustee of the Savings Plan. The district court erred in finding that ERISA preempts the breach-of-contract claim against MVP, and therefore that ruling is reversed.

## C. Negligent-Misrepresentation Claims

Similar to the breach-of-contract claim discussed above, we conclude that PONI's negligent-misrepresentation claim against NCB is preempted under ERISA § 514(a), but its claim against MVP is not.

In reviewing whether ERISA preempts a state-law negligent-misrepresentation claim, we have held that ERISA preemption does not turn on the timing of the alleged misrepresentation, but rather the true nature of the issues underlying the claim. *Lion's Volunteer Blind Indus., Inc. v. Automated Group Admin., Inc.*, 195 F.3d 803, 808 (6th Cir. 1999). Where resolution of the misrepresentation claim necessarily requires evaluation of the plan and the parties' performance pursuant to it, the claim is preempted. *See id.* at 809 (holding that the claim is preempted because "a court entertaining the merits of this misrepresentation claim would be forced to calculate [plan] benefits that would have been owed to [the plaintiff] under [the ERISA plans]").

In this case, PONI alleges that NCB and MVP "negligently misrepresented their knowledge of the applicable law and their ability to operate the respective Plans in conformity" with the law, the plan documents, and industry standards. Joint Appendix ("J.A.") at 15 (Complaint at 7). With regard to NCB, a court reaching the merits of the claim would be required to assess NCB's performance of its obligations under the Savings Plan in order to compare it with what NCB initially represented to PONI. In addition, the claim alleges that NCB represented that it would operate the Savings Plan in conformity with the applicable law. Therefore, a court reviewing the misrepresentation claim would be charged with determining the legality of NCB's performance as well. These questions go to "the very heart of issues within the scope of ERISA's exclusive regulation." *Lion's Volunteer*, 195 F.3d at 808 (internal quotation marks and citation omitted). ERISA § 502(a)(3) authorizes a suit "to enjoin any act or practice which violates any provision of

---

[7]We recognize that PONI has alleged damages consistent with the top-heavy contribution amount; however, we reach no conclusion regarding either the method to determine the amount of damages to be recovered or the actual recovery amount.

this title or the terms of the plan." ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3). Permitting PONI's claim to proceed would result in the use of state tort-law as an end run around ERISA's exclusive enforcement mechanism. Therefore, we conclude the negligent-misrepresentation claim against NCB is preempted under ERISA § 514(a).

By contrast, a negligent-misrepresentation claim against MVP does not implicate the same concerns because ERISA does not govern the relationship between a plan and its non-fiduciary service provider. PONI's claim against MVP arises solely out the oral agreement for MVP to provide record-keeping services. A reviewing court would not have to determine if an ERISA-qualified plan had been violated, but rather simply if MVP failed to perform as it had represented. Moreover, the negligent-misrepresentation claim against MVP does not undermine any of ERISA's objectives or threaten the relations among traditional ERISA plan entities. Therefore, we conclude that the negligent-misrepresentation claim against MVP is not preempted.

Thus, on this count, we affirm the district court's ruling with respect to NCB, but reverse it with respect to the negligent-misrepresentation claim against MVP.

## D. Absence of Cognizable Damages

Finally, we conclude that PONI has alleged sufficient cognizable damages to overcome MVP's motion for judgment on the pleadings.

We have stated that "[w]hile the pleading standard under the federal rules is very liberal, the price of entry, even to discovery, is for the plaintiff to allege a factual predicate concrete enough to warrant further proceedings, which may be costly and burdensome." *Found. for Interior Design Educ. Research v. Savannah Coll. of Art & Design*, 244 F.3d 521, 530 (6th Cir. 2001) (internal quotation marks and citation omitted). Under Ohio law, "[a] claimant seeking to recover for breach of contract must show damage as a result of the breach. Damages are not awarded for a mere breach of contract; the amount of damages awarded must correspond to injuries resulting from the breach." *Textron Fin. Corp. v. Nationwide Mut. Ins. Co.*, 684 N.E.2d 1261, 1266 (Ohio Ct. App. 1996) (internal citations omitted). Moreover, the damages awarded "should place the injured party in as good a position as it would have been in but for the breach." *Id.* We have stated that the "failure to allege cognizable damages compels the dismissal of the complaint." *Chrysler Corp. v. Fedders Corp.*, 643 F.2d 1229, 1234 (6th Cir.), *cert. denied*, 454 U.S. 893 (1981).

In this case, PONI alleges that as a result of MVP's breach of the contract, PONI was required to pay a top-heavy contribution of $137,087.17 for the years 1991-1998, pay a fine of $5,000, and incur costs of $35,000. Analogizing to back-taxes cases, MVP argues that there was no harm because PONI would have had to pay the contribution amount even if MVP performed the top-heavy testing. MVP Br. at 35-37; *see DCD Programs Ltd. v. Leighton*, 90 F.3d 1442, 1451 (9th Cir. 1996) (holding that back taxes paid to the IRS as a result of disallowed deductions are not recoverable damages against promoters). Specifically, MVP argues PONI would not have altered its course of action had it known in 1991 about the top-heavy situation. As support for its argument, MVP cites the fact that PONI has continued operating its plans beyond 1998, including making all the required top-heavy payments. MVP Br. at 38.

Though MVP's argument is not without some merit, it is more appropriately addressed at a trial rather than the pleadings stage. The crux of the issue MVP raises is what would PONI have done had it known about the top-heavy situation in 1991. While it does not explicitly address the issue, the complaint certainly raises it inferentially. We have stated that a "complaint must contain either direct or *inferential allegations* respecting all the material elements to sustain a recovery under *some* viable legal theory." *Scheid v. Fanny Farmer Candy Shops, Inc.*, 859 F.2d 434, 436 (6th Cir.

1988) (internal quotation marks and citation omitted) (first emphasis added).  PONI has raised the inferential allegation that had it known the Key Employee Insurance Policy had been incorrectly valued in 1991, it would have altered its course.  Specifically, PONI could have adjusted the contributions to ensure the plans were not top-heavy from 1992-1998.  Moreover, PONI's damage request does not rely solely on this inference, but also includes the IRS fine as well as costs and expenses associated with the IRS settlement.  The tax penalties and settlement costs are certainly part of recoverable damages.  *See Stone v. Kirk*, 8 F.3d 1079, 1092 (6th Cir. 1993).  At this stage, we cannot say that PONI "can prove no set of facts in support of [its] claim that would entitle [it] to relief." *Ziegler*, 249 F.3d at 512.  Therefore, PONI has alleged cognizable damages sufficient to overcome MVP's motion for judgment on the pleadings.

### III.  CONCLUSION

For the foregoing reasons, we **AFFIRM** the district court's grant of judgment on the pleadings in favor of NCB and **REVERSE** the judgment with respect to the district court's ruling that the state-law claims against MVP are preempted by ERISA § 514(a).  We **REMAND** the case to the district court for further proceedings consistent with this opinion.