NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 07a0342n.06
Filed: May 15, 2007

No. 06-3916

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

| | | |
|---|---|---|
| W. FRED KLOOTS, JR., TODD WITHAM, RICHARD K. MARTINDALE, GERALD STATEN, as Trustees of the Leonard Insurance Services Agency, Inc. Employee Stock Ownership Plan, LEONARD INSURANCE SERVICES AGENCY, | ) ) ) ) ) ) ) ) | |
| Plaintiffs-Appellees, | ) ) ) | |
| THE CINCINNATI INSURANCE COMPANY, assignee and partial subrogee of Leonard Insurance Services Agency | ) ) ) ) ) | ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF OHIO |
| Plaintiff-Appellee | ) ) | |
| v. | ) ) | |
| AMERICAN EXPRESS TAX AND BUSINESS SERVICES, INC. and PAUL STOLIC, | ) ) ) ) | |
| Defendants-Appellants. | | |

Before: SUHRHEINRICH and GIBBONS, Circuit Judges; HEYBURN, District Judge.[*]

**JULIA SMITH GIBBONS, Circuit Judge.** Defendants American Express Tax and

Business Services, Inc. (American Express) and Paul Stolic appeal the United States Magistrate

---

[*] The Honorable John G. Heyburn, United States District Judge for the Western District of Kentucky, sitting by designation.

1

Judge's dismissal without prejudice of four Ohio state law claims arising out of their valuation of stock held in an employee stock ownership plan. They contend that the Employee Retirement Income Security Act (ERISA) preempts those claims and the district court should have dismissed them with prejudice. For the reasons stated below, we affirm.

I.

Plaintiffs, W. Fred. Kloots, Jr., Todd Witham, Richard K. Martindale, and Gerald Staten, are trustees of the Leonard Insurance Services Agency, Inc. Employee Stock Ownership Plan (ESOP), a plan maintained by plaintiff Leonard Insurance Services Agency, Inc. (Leonard) and governed by ERISA.

Leonard created the ESOP in 1990. Between 1993 and 1994, Leonard retained Hausser & Taylor (Hausser), an accounting firm, to conduct valuations of Leonard stock, and defendant Paul Stolic was involved in providing those services in his capacity as an employee and director at Hausser. The president of Leonard, Martin Evechik, had requested that Hausser prepare stock valuation based upon a formula included in the buy-sell agreement contained in the employment contract of all Leonard shareholders. That formula produced a per-share value by multiplying one and a half times total income plus or minus the positive or negative book value of the company and dividing by the number of existing shares. The buy-sell agreement governed Leonard's repurchase of the shares held by individuals leaving the organization. In 2000, defendant American Express Tax and Business Services, Inc. (American Express) acquired Hausser, at which time Stolic became a managing director at American Express. Between 1994 and 2002, defendants – specifically, Stolic functioning as an employee of American Express, formerly Hausser – produced a series of valuation letters for Leonard containing estimates of the value of Leonard stock.

2

Stolic acknowledged during his deposition that Hausser maintained documents indicating that the values set forth in the materials prepared by the firm for Leonard were being used for the ESOP. He further testified that he never instructed anyone at Leonard that the valuations Hausser provided should not be used for ESOP purposes. Stolic claimed that he first became aware that Leonard was using Hausser's valuations for the purposes of the ESOP after the first year Hausser took on the valuation assignment.

On November 21, 1997, the United States Department of Labor (DOL) issued a letter to the ESOP plan administrators notifying them that it was initiating an investigation to determine compliance with the provisions of ERISA. In response to the DOL's letter, Leonard transmitted the stock valuations completed in the years ending December 31, 1994, 1995, and 1996 to the agency. Following another letter, dated April 26, 1999, Leonard, with Hausser's assistance, provided information on the valuations prepared up to and through the year ending December 31, 1998.

On March 12, 2002, the DOL issued a second letter notifying the ESOP trustees of the close of its investigation and its findings. It concluded that "[b]ased on the facts gathered in this investigation, and subject to the possibility that additional information may lead us to revise our views, it appears that, as Plan fiduciaries, you may have violated several provisions of ERISA." The DOL took issue with the method used in valuing Leonard stock, noting that the results did not reflect "a good faith determination of the fair market value of the Leonard stock," because it failed to take into account a number of factors. According to the DOL letter, the ESOP trustees had committed a series of violations of ERISA's provisions and directed the trustees to take steps to correct the violations. Defendants participated in remedial steps taken by Leonard in the face of the DOL's findings, including producing a second set of valuations. According to Stolic, the DOL refused to

3

accept new valuations produced by defendants.

The DOL investigation resulted in a cost of $500,000 paid to the plan pursuant to an agreement with the agency by Leonard and the trustees of the ESOP to bring the plan into compliance. Leonard and the ESOP trustees made a claim to their insurer, Cincinnati Insurance Company (CIC), for losses sustained. CIC paid the claim.

On October 26, 2004, plaintiffs, including CIC, filed a complaint in the United States District Court for the Northern District of Ohio against American Express and Stolic, raising four claims: (1) breach of fiduciary responsibility in violation of §§ 404 and 405 of ERISA; (2) professional negligence; (3) breach of contract; and (4) negligent misrepresentation. The trustees and Leonard sought contribution and CIC sought compensation as subrogee of the trustees and Leonard.

Defendants moved for summary judgment. The magistrate judge[2] produced a written order granting summary judgment on plaintiffs' ERISA claim, concluding that plaintiffs did not have standing to bring a claim under ERISA, ERISA did not allow for plaintiffs' contribution claim, and defendants were not acting in a fiduciary capacity when they provided valuation of ERISA stock. The district court declined to exercise supplemental jurisdiction over plaintiffs' remaining state law claims under 28 U.S.C. § 1367. It nevertheless determined that ERISA preempted none of the state law claims against defendants and, accordingly, dismissed those claims without prejudice.

Plaintiffs do not appeal the magistrate judge's entry of judgment on their ERISA claim. Defendants filed a timely notice of appeal to the magistrate's preemption decision. They contend on appeal that the court should have dismissed with prejudice plaintiffs' remaining state law claims

---

[2]In accordance with 28 U.S.C. § 636 and Fed. R. Civ. P. 73, the parties consented to the magistrate judge's management of the case.

on preemption grounds. We limit our review to consideration of this issue.

II.

Whether the preemptive force of a federal statute precludes the pursuit of a state claim is a question of law that we review *de novo*. *Nester v. Allegiance Healthcare Corp.*, 315 F.3d 610, 613 (6th Cir. 2003). ERISA's provisions "supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan" governed by ERISA's terms. ERISA § 514(a), 29 U.S.C § 1144(a). Citing the difficulties posed by the language of § 514, courts have struggled to determine the scope of ERISA's preemption provision. *See Penny/Ohlman/Nieman, Inc. v. Miami Valley Pension Corp. (PONI)*, 399 F.3d 692, 697 (6th Cir. 2005) (noting that the Supreme Court had dealt with the preemption provision's "opaque language . . . approximately twenty times over the last twenty-four years") (internal quotation marks omitted).

The Sixth Circuit has identified three classes of state law claims subject to ERISA preemption: claims based on "state laws that (1) mandate employee benefit structures or their administration; (2) provide alternative enforcement mechanisms; or (3) bind employers or plan administrators to particular choices or preclude uniform administrative practice, thereby functioning as a regulation of an ERISA plan itself." *Briscoe v. Fine*, 444 F.3d 478, 497 (6th Cir. 2006) (quoting *PONI*, 399 F.3d at 698). We must determine, then, whether plaintiffs' claims of professional negligence, breach of contract, and negligent misrepresentation fit within any of the preempted classes of state law claims. The first and third categories are plainly inapplicable here. Thus, defendants are left to argue that plaintiffs' state law claims constitute an attempt to seek an

5

"alternative enforcement mechanism" for the legal duties imposed under ERISA.[3]

It is important, at the outset, to note the district court's uncontested determination that defendants are not fiduciaries relative to the ESOP or its beneficiaries, as that conclusion drives much of our analysis. As plaintiffs point out, courts, including our own, have consistently declined to hold that state law claims against non-fiduciary professional services providers constitute impermissible attempts to enforce responsibilities governed by federal law. In *PONI*, the Sixth Circuit evaluated claims of ERISA preemption advanced against state law claims of breach of contract and negligent misrepresentation against a non-fiduciary "record keeper and . . . broker of the life insurance policies held as assets" for an employee stock ownership plan. 399 F.3d at 695. The court noted there that "other courts of appeals have . . . held that ERISA does not preempt state-law claims brought against non-fiduciary service providers in connection with professional services rendered to an ERISA plan." 399 F.3d at 698. The court in *PONI* relied on a series of cases from other circuits permitting state law claims to proceed on the ground that they were against professional entities acting in a non-fiduciary capacity. 399 F.3d at 698-99. *See, e.g.*, *Gerosa v. Savasta & Co., Inc.*, 329 F.3d 317, 330 (2d Cir. 2003) (determining that ERISA did not preempt ERISA plan trustees' state law claims against organization that provided actuarial services that resulted in underfunding of ERISA plan); *Ariz. State Carpenters Pension Trust Fund v. Citibank*, 125 F.3d 715, 724 (9th Cir. 1997) (concluding that ERISA did not preclude a state law claim for breach of a custodial agreement against a non-fiduciary bank); *Coyne & Delany Co. v. Selman*, 98

_____

[3]Plaintiffs also argue that defendants should be foreclosed from arguing that plaintiffs' claims are preempted when, in a previous filing in the district court, defendants stated that plaintiffs' claims "neither arise under ERISA nor involve the ESOP." Because plaintiffs' claims are not preempted, we do not address this claim.

F.3d 1457, 1466-67 (4th Cir. 1996) (permitting plaintiffs to pursue in state court their "garden-variety" professional malpractice claim against defendants "in their (non-fiduciary) capacities as insurance professionals"); *Airparts Co., Inc. v. Custom Benefit Servs. of Austin, Inc.*, 28 F.3d 1062, 1064 (10th Cir. 1994) (holding ERISA did not preempt professional negligence claim by trustees against "outside consultant hired to advise the plan's trustees"). In *PONI*, the court ultimately determined that ERISA's preemptive provision did not bar plaintiffs' claims against the entity providing record keeping services to the stock ownership plan. As the court noted, the defendant in question was a "third-party service provider" performing services "no different than the consulting, custodial, actuarial, or legal services provided to ERISA plans in which the courts have found state-law causes of action to lie." 399 F.3d at 701.

Defendants attempt unsuccessfully to distinguish these cases, including *PONI*. They argue, in essence, that, because ERISA mandates the valuation they were called upon to perform, it preempts any state law claims against them arising out of their work. They state, "[b]oth the fiduciary duties of [plaintiffs] and the valuation criteria at issue are expressly set forth by ERISA." (Appellants' Reply Br. at 4-5.) However, the duties imposed on the plaintiffs under ERISA are largely irrelevant for the court's purposes here, as this case does not involve a claim against plaintiffs for breach of their fiduciary duties. The DOL's letter notifying the ESOP of the results of its audit does not speak to any obligations imposed on defendants in their valuation of Leonard stock. Rather, it references plaintiffs' "failure to obtain annual independent appraisals that properly determine the fair market value of Leonard stock." The DOL letter is clear that the agency's concern arose from plaintiffs' failure to execute properly their duties as fiduciaries under the ESOP, not defendant's role in valuing ESOP stock. Defendants also assert that resolution of plaintiffs' state law claims would

7

require evaluation of the terms of ERISA and the ESOP. However, they point to no provision in ERISA or the ESOP that could conceivably underlie plaintiffs' suit.

Indeed, in this case, "a service agreement or contract *separate and distinct* from the ERISA qualified plan," *PONI*, 399 F.3d at 699, is the basis for plaintiffs' claims. The record before us establishes that the service agreement between plaintiffs and defendants was independent of the terms of the ESOP. In a declaration, Stolic stated that defendants were "orally engaged by Leonard's president, on behalf of Leonard, to perform a specific calculation of the fair market value of Leonard stock as of year end." The plaintiffs' complaint confirms this claim. This oral agreement, not the ESOP, is the basis for the defendants' actions on Leonard's behalf and the origin of plaintiffs' claim for breach of contract.

Similarly, defendants' obligations as certified public accountants are the basis for plaintiffs' professional negligence claim, which is simply a malpractice claim by another name. *See Airparts, Co.*, 28 F.3d at 1067 ("Malpractice . . . and professional negligence are synonymous."). Such claims based on alleged breaches of professional responsibilities are generally subject to resolution under state law. *See Gerosa*, 329 F.3d at 328 ("Regulating the professions, particularly under a rubric of professional malpractice, is a traditional state function."); *Custer v. Sweeney*, 89 F.3d 1156, 1166 (4th Cir. 1996) (noting that "the various circuit and district courts that have faced the preemption question in cases involving professional negligence or malpractice claims against . . . service providers to ERISA plans have declined to read ERISA's preemptive scope so broadly" as to preclude suits against these entities). Finally, as the court explained in *PONI*, a negligent misrepresentation claim against a "non-fiduciary service provider" does not implicate ERISA, as it does not require a court to evaluate whether the service provider violated the terms of an ERISA-

8

governed plan. 399 F.3d at 703. A court would merely have to consider whether the service provider "failed to perform as it represented." *Id.*

In sum, the duties forming the bases for plaintiffs' state law claims arise from sources entirely distinct from the ESOP or ERISA and thus do not intrude upon ERISA's exclusive enforcement scheme. We accordingly conclude that the district court did not err in dismissing those claims without prejudice to refiling in state court.

## III.

For the foregoing reasons, we affirm the judgment of the district court.