NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 09a0085n.06
Filed: February 2, 2009

No. 08-5213

# UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

| | | |
|---|---|---|
| WAYNE JAGGERS; MABELLE JAGGERS; SPEEDWAY SUPERAMERICA LLC, | ) ) ) | |
| *Plaintiffs-Appellees*, | ) ) ) | ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF KENTUCKY |
| v. | ) ) | |
| CITY OF ALEXANDRIA ALEXANDRIA CITY COUNCIL, | ) ) ) | O P I N I O N |
| *Defendant*, | ) ) ) | |
| and | ) ) | |
| STACEY GRAUS, in his individual capacity as Council member for the Alexandria City Council; WILLIAM RACHFORD, in his individual capacity as Council member for the Alexandria City Council; BOBBI JO FARMER, in her individual capacity as Council member for the Alexandria City Council; BARBARA WEBER, in her individual capacity as Council member for the Alexandria City Council, | ) ) ) ) ) ) ) ) ) | |
| *Defendants-Appellants*. | ) ) ) | |

BEFORE:   COLE and COOK, Circuit Judges; and EDMUNDS,[*] District Judge.

---

[*]The Honorable Nancy G. Edmunds, United States District Judge for the Eastern District of Michigan, sitting by designation.

**COLE, Circuit Judge.** This interlocutory appeal arises from a suit by Plaintiffs-Appellees Wayne and Mabelle Jaggers and Speedway SuperAmerica LLC. Plaintiffs brought suit under 42 U.S.C. § 1983 against Defendants-Appellants City Council Members Stacey Graus, William Rachford, Bobbi Jo Farmer and Barbara Weber (collectively, "Council Members") in their individual and official capacities, alleging, inter alia, that the council members violated plaintiffs' rights to procedural and substantive due process under the United States and Kentucky Constitutions by denying their proposed site development plan for a Speedway gas station/convenience store on a tract of land owned by plaintiffs. The Council Members moved to dismiss plaintiffs' claims against them in their individual capacities under Federal Rules of Civil Procedure 12(c), arguing that these claims were barred by legislative immunity. The district court concluded that a decision with respect to legislative immunity would be premature prior to further discovery and denied the motion. On interlocutory appeal, the Council Members argue that the district court erred because their entitlement to legislative immunity is present on the face of the plaintiffs' complaint. We disagree. Accordingly, for the reasons set forth below, we **DISMISS** the interlocutory appeal for lack of appellate jurisdiction and **REMAND** the case for further proceedings consistent with this opinion.

## I. BACKGROUND

### A. Factual Background

The complaint, the factual allegations of which must be accepted as true for purposes of deciding or reviewing a motion for judgment on the pleadings pursuant to Federal Rules of Civil Procedure 12(c), alleges the following events. Wayne and Mabelle Jaggers (collectively, "the

Jaggers") own a parcel of property located within the City of Alexandria, Campbell County, Kentucky. They entered into a land purchase contract with Speedway SuperAmerica LLC ("Speedway"), which would allow Speedway to build a gas station and convenience store on U.S. Highway 27. Speedway and the Jaggers then sought approval for a zoning map amendment and development plan from the Alexandria Planning and Zoning Commission (the "Commission") and Alexandria City Council ("City Council") under City of Alexandria Zoning Ordinance § 14.01. The proposed amendment and plan would permit a zone change for the portion of the property not already zoned Highway Commercial. On May 16, 2006, after a public hearing, the Commission recommended approving both the zoning amendment and the development plan. On July 20, 2006, after considering the Commission's recommendation, the City Council voted to approve the zoning change but rejected the development plan.

After the City Council rejected the development plan, representatives for the Jaggers and Speedway met with the Mayor of Alexandria, Dan McGinley, City Attorney, Mike Duncan and the Commission Chair, John Jewell, to discuss the development plan. During this meeting, Mayor McGinley and Duncan advised the Jaggers and Speedway that development could proceed after a site plan was submitted solely to the Commission. The Jaggers then submitted the requested site plan to the Commission for review and approval. Afterwards, the Commission held a public hearing on the site plan, now termed a development plan. During the hearing, Council Members Stacey Graus and Barbara Weber objected to the development plan, but the City of Alexandria's City Engineer, Mark Brueggman, recommended approving the plan. Ultimately, the Commission recommended approving the development plan.

Later, however, Duncan reversed his earlier statements indicating that the development plan need not be submitted to the City Council, and stated that a new development plan must be submitted to the City Council for its approval. Before submitting the development plan to the City Council, the Jaggers and Speedway sent a letter to Duncan inquiring as to the reason they were not allowed to proceed with development on the basis of the Commission's review and approval of the development plan alone. They did not receive a response to this letter. The development plan was then submitted to the City Council for review. On April 19, 2007, after a public hearing on the matter, the Council Members rejected the development plan.

## B. The Lawsuit

Two lawsuits arose from the City Council's denial of plaintiffs' proposed site development plan. First, the Jaggers filed suit in Kentucky state court against the City of Alexandria and Council Members Stacey Graus, William Rachford, Bobbi Jo Farmer and Barbara Weber in both their official and individual capacities. The Jaggers alleged that, under 42 U.S.C. § 1983, the City and the Council Members individually violated the Jaggers's right to procedural and substantive due process under the United States and Kentucky Constitutions by rejecting their site development plan, and that the Council Members individually engaged in arbitrary and capricious action. The Jaggers also alleged that the Council Members violated the Kentucky Open Meetings Act. Speedway was named as a real party in interest to the Jaggers's suit. Thereafter, Speedway filed a similar suit in Kentucky federal court, naming the Jaggers as real parties in interest. In addition to the claims asserted in the Jaggers's complaint, Speedway also alleged that the City violated its rights to equal protection under the United States and Kentucky Constitutions. Because the actions asserted federal claims under §

1983, the defendants removed the action to the United States District Court for the Eastern District of Kentucky. Shortly after removal to federal court, the Council Members filed a motion to dismiss both suits pursuant to Federal Rules of Civil Procedure 12(c), arguing that the individual-capacity claims were barred by absolute legislative immunity. The Council Members also filed a motion to consolidate the Jaggers's suit with the Speedway action.

After hearing oral argument on the motions, the district court denied the Council Members' motion to dismiss without prejudice, and granted the motion to consolidate the two actions. With respect to the motion to dismiss, the district court decided that there were issues of material fact pertaining to legislative immunity. The district court also concluded that it would need to: (1) review the zoning ordinance to determine the basis of the Council Members' review of the development plan; (2) determine the procedures used throughout the decision-making process by the Council Members in rejecting the development plan; and (3) determine the actions taken by the Council Members to reach their decision. The Council Members filed this timely interlocutory appeal.

## II. JURISDICTION

In this interlocutory appeal, which is limited to the Council Members' assertions of legislative immunity, the Council Members contend that the district court erred in ruling that additional information is necessary to determine whether the plaintiffs' claims against the Council Members in their individual capacities are barred by state and federal legislative immunity. Ordinarily, appellate courts do not have jurisdiction over interlocutory appeals, like the Council Members' appeal of the district court's denial of their motion to dismiss, because such decisions are not final judgments. 28 U.S.C. § 1291; *see Todd v. Weltman, Weinberg & Reis Co., L.P.A.*, 434 F.3d

432, 434 (6th Cir. 2006) (stating the denial of a motion to dismiss pursuant to Rule 12(c) is ordinarily considered non-final, and, therefore, not immediately appealable to this Court).

The parties assert that we have appellate jurisdiction under the collateral-order doctrine, which permits interlocutory appellate review of a narrow class of non-final orders that "finally determine claims of right separable from, and collateral to, rights asserted in the action, too important to be denied review and too independent of the cause itself to require the appellate consideration be deferred until the whole case is adjudicated." *Cohen v. Beneficial Indus. Loan Corp.*, 337 U.S. 541, 546 (1949). Under the collateral-order doctrine, however, an "order denying a motion to dismiss a complaint against a[n] . . . official when the dismissal motion is based on the official's assertion of absolute or qualified immunity is immediately reviewable to the extent that the denial turns on issues of law." *State Employees Bargaining Agent Coalition v. Rowland*, 494 F.3d 71, 82 (2d. Cir. 2007). Conversely, appellate courts will not review the district court's decision "if a factual determination is a necessary predicate to the resolution of whether . . . [absolute] immunity is a bar" to suit. *Id.* Here, the district court determined that further discovery is necessary to determine whether the Council Members are entitled to legislative immunity. We agree. As such, for the reasons set forth below, the collateral-order doctrine does not confer appellate jurisdiction on this Court.

## III. DISCUSSION

### A. Standard of Review

We review the district court's denial of absolute immunity de novo. *Brookings v. Clark*, 389 F.3d 614, 617 (6th Cir. 2004) (citing *Barnes v. Winchell*, 105 F.3d 1111, 1115 (6th Cir. 1997)).

Further, we review a motion for judgment on the pleadings pursuant to Federal Rules of Civil Procedure 12(c) under the same de novo standard as applies to review of a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure. *Penny/Ohlmann/Nieman, Inc. v. Miami Valley Pension Corp.*, 399 F.3d 692, 697 (6th Cir. 2005) (hereinafter "*PONI*"). In reviewing a motion for judgment on the pleadings, we must accept as true all well-pleaded allegations of fact in the plaintiff's complaint, construe the complaint in the light most favorable to the plaintiff, and determine whether the plaintiff undoubtedly can prove no set of facts in support of his claim that would entitle him to relief. *Id*. at 697. We may also consider matters of public record, orders, exhibits attached to the complaint and items appearing in the record of the case. *Id*. We, however, need not accept as true legal conclusions or unwarranted factual inferences. *Id*. A motion brought under Rule 12(c) is appropriately granted only when no issue of material fact exists and when the moving party is entitled to judgment as a matter of law. *JPMorgan Chase Bank, N.A. v. Winget*, 510 F.3d 577, 582 (6th Cir. 2007).

## B. Legislative Immunity Under Federal Law

Here, the Council Members contend that they have legislative immunity as a matter of law. They assert that in rejecting the plaintiffs' development plan, they were engaging in acts that were legislative in nature, thereby entitling them to absolute immunity for those acts. In support of this argument, the Council Members maintain that they engaged in legislative functions when they debated the effects of the Jaggers's proposed site plan development on the Alexandria community as a whole. If true, the Council Members' actions may bar claims against them in their personal capacity inasmuch as those actions were legislative, rather than administrative. *Bogan v.*

*Scott-Harris*, 523 U.S. 44, 49 (1998); *R.S.W.W., Inc. v. City of Keego Harbor*, 397 F.3d 427, 437 (6th Cir. 2005).   That is, individual members of local governmental bodies, like the Council Members, are absolutely immune from suit for damages under 42 U.S.C. § 1983 when conducting legitimate  legislative  activity.   *Bogan*,  523  U.S.  at  49.   Not  all  governmental  acts  by  local government bodies are necessarily legislative in nature, and "[t]he various activities of most local or  municipal  officials  cannot  be  characterized  as  only  administrative,  legislative,  or  judicial." *Haskell v. Washington Twp.*, 864 F.2d 1266, 1277-78 (6th Cir. 1988).   Here, the Council, whose members are elected, is a local governmental body that has a combination of both legislative and administrative powers.   Ky. Rev. Stat. §  83A.130.   It is only with respect to the legislative powers delegated to them that the members of local boards, like the City Council, are entitled to absolute immunity.  *Bogan*, 523 U.S. at 54. Therefore, the burden rests on the Council Members "to establish the existence of absolute legislative immunity."  *Canary v. Osborn*, 211 F.3d 324, 328 (6th Cir. 2000).  And the existence of that immunity " turns on the nature of the act," not "the motive or intent of the official performing it."  *Bogan*, 523 U.S. at 54.  The question before us, therefore, is whether the Council Members' actions, when "stripped of all considerations of intent and motive," were legislative rather than administrative or executive.  *Id*. at 55.

In *Bogan*, the Supreme Court set forth the necessary considerations to decide whether a defendant's acts are legislative, and, therefore, protected by the doctrine of absolute immunity. According to the *Bogan* Court, two factors are relevant to determine whether a defendant's acts fall within the sphere of legitimate legislative activity.  *Id*. at 54.  First, we must consider whether a defendant's actions were legislative in form., *i.e.*, whether "they were integral steps in the legislative

process." *Id*. at 55. Second, we must ask whether a defendant's actions were "legislative in substance," *i.e.*, whether the actions "bore all the hallmarks of traditional legislation," including whether they "reflected discretionary, policymaking decisions implicating the budgetary priorities" of the government and the services the government provides to its constituents. *Id*. at 55-56.

First, the Council Members cannot establish that, as a matter of law, their actions were legislative in form ("procedurally legislative"). *Bogan*, 523 U.S. at 55. Voting for an ordinance is "quintessentially legislative" in form. *Id*. Similarly, introducing a budget and signing into law an ordinance are legislative in form. *Id*. The Council Members do not maintain that their actions were "quintessentially legislative." According to the plaintiffs' allegations, the Council Members disapproved their development plan pursuant to Alexandria Zoning Ordinance § 14(1)(c), which provides: "[t]he Alexandria City Council shall, within forty-five (45) consecutive days after receiving the recommendations of the Planning Commission, review said recommendations and take action to approve or disapprove the proposed Development Plan." (Joint Appendix ("JA") 11-12.) While the Council Members' actions to disapprove the plaintiffs' development plan may have complied with § 14(1)(c), there is nothing in the record indicating that the Council Members' authority to do so stems from their legislative authority. That is, there is no allegation or evidence in the record establishing that the procedures set forth in §14(1)(c) are the procedures Council Members use to invoke their legislative, rather than their managerial or administrative powers. Moreover, the Council Members do not contend that their decision was the result of legislative powers delegated to them by Kentucky law or that the actions undertaken to reach their decision were integral steps in the legislative process. Having no evidence before us establishing that the

Council Members' actions were integral steps in the legislative process, we find that discovery is necessary to determine whether the Council Members' acts were procedurally legislative under *Bogan*. In particular, the Council Members must put forth some evidence that they took their actions under the legislative powers delegated to them under Kentucky law. *Bogan*, 523 U.S. at 55.

Similarly, we conclude that further discovery is necessary before it can be determined whether the Council Members' actions were legislative in substance. *Id*. at 55-56. The Council Members assert that they discussed the effects of the proposed map amendment and site plan on their community, taking into account several factors, including the size of the development and the fact that the development would require variances from the existing zoning code, and traffic safety implications, indicating that their decision was the result of policy considerations. We disagree. "Although zoning is ordinarily a legislative activity, it is not always legislative for the purposes of [legislative] immunity." *Haskell*, 864 F.2d at 1278. "If the underlying purpose of zoning activity is to establish general policy, then it is legislative." *Id*. If, however, the zoning action involves applying existing zoning rules to a specific property, the question of legislative immunity becomes more difficult because applying known rules and legislation to make a zoning decision in this way is more likely to be administrative rather than legislative. *See* 8A Eugene McQuillian, The Law of Municipal Corporations § 25.217 (3d ed. 2008) ("[A] zoning ordinance vesting in the municipal council the power to determine whether a building permit should be granted . . . ordinarily is regarded as administrative, rather than legislative in character."). The question before us, then, is whether we can conclude from the allegations set forth in the complaint that the Council Members'

actions in reaching their decision evidenced broad-based policy decisions. *Bogan*, 523 U.S. at 54. We cannot.

Instead, those allegations, construed in the light most favorable to the plaintiffs, indicate that a question of fact exists as to whether the Council Members' decision resulted from larger policy concerns or goals. In particular, the plaintiffs' allegations—that Council Member Graus moved to disapprove their development plan because, among other things, the development would be oversized and would require variances, the entrance would be too close, there were safety and traffic concerns during peak times, and patrons leaving the property may attempt to make an unlawful right-hand turn (JA 17.)—are not wholly legislative in character. Rather, the bulk of these concerns, construed in a light favorable to the plaintiffs, seem to center on the suitability of the Jaggers's property for its proposed use. While such concerns may stem from underlying policy considerations, we see none on the face of the plaintiffs' complaint. Given that further evidence is necessary to determine whether these considerations were legislative in substance, we lack appellate jurisdiction under the collateral-order doctrine to decide this interlocutory appeal. *State Employees Bargaining Agent Coalition*, 494 F.3d at 82.

## C. Legislative Immunity Under State Law

Because we lack appellate jurisdiction to review this interlocutory appeal, we decline to exercise pendent jurisdiction to review the district court's denial of the Council Members' motion to dismiss on the ground of legislative immunity under Kentucky law. *Brennan v. Twp. of Northville*, 78 F.3d 1152, 1157 (6th Cir. 1996).

### IV. CONCLUSION

We **DISMISS** the Council Members' interlocutory appeal, and **REMAND** the case to the

district court for proceedings consistent with this opinion.