RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)
File Name: 14a0171p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

---

SELF-INSURANCE INSTITUTE OF AMERICA, INC.,

*Plaintiff-Appellant,*

*v.*

No. 12-2264

RICK SNYDER, in his official capacity as Governor of the State of Michigan; R. KEVIN CLINTON, in his official capacity as Director of the Office of Financial and Insurance Regulation of the State of Michigan; ANDREW DILLON, in this official capacity as Treasurer of the State of Michigan,

*Defendants-Appellees.*

Appeal from the United States District Court
for the Eastern District of Michigan at Detroit.
No. 2:11-cv-15602—Julian A. Cook, Jr., District Judge.

Argued: January 31, 2014

Decided and Filed: August 4, 2014

Before: BOGGS and MOORE, Circuit Judges; BARRETT, District Judge.[*]

---

## COUNSEL

**ARGUED:** Stephen Wasinger, STEPHEN F. WASINGER PLC, Royal Oak, Michigan, for Appellant. Aaron D. Lindstrom, OFFICE OF THE MICHIGAN ATTORNEY GENERAL, Lansing, Michigan, for Appellees. **ON BRIEF:** Stephen Wasinger, STEPHEN F. WASINGER PLC, Royal Oak, Michigan, John H. Eggertsen, EGGERTSEN CONSULTING PC, Ann Arbor, Michigan, for Appellant. John J. Bursch, OFFICE OF THE MICHIGAN ATTORNEY GENERAL, Lansing, Michigan, for Appellees. Ronald S. Lederman, SULLIVAN, WARD, ASHER & PATTON, P.C., Southfield, Michigan, Patricia J. Tarini, Edmond Prifti, SACHS

---

[*]The Honorable Michael R. Barrett, United States District Judge for the Southern District of Ohio, sitting by designation.

WALDMAN, Detroit, Michigan, Richard C. Kraus, FOSTER, SWIFT, COLLINS & SMITH, P.C., Lansing, Michigan, Joseph T. Aoun, NUYEN, TOMTISHEN AND AOUN, P.C., Ann Arbor, Michigan, for Amici Curiae.

———————————

**OPINION**

———————————

KAREN NELSON MOORE, Circuit Judge.　This case requires us, once again, to navigate the quagmire that is preemption.　Plaintiff-Appellant, Self-Insurance Institute of America, Inc. ("SIIA"), represents various sponsors and administrators of self-funded ERISA benefit plans, which it claims are affected by Michigan's Health Insurance Claims Assessment Act.　SIIA argues that federal law—the Supremacy Clause, U.S. Const. art. VI, § 2, and ERISA's express-preemption provision, 29 U.S.C. § 1144(a)—prohibits the application of the Act to ERISA-covered entities.　The Michigan statute, however, escapes the preemptive reach of federal law, and we AFFIRM the district court's dismissal of SIIA's suit.

## I. BACKGROUND

In 2011, Michigan passed the Health Insurance Claims Assessment Act ("the Act"), 2011 Mich. Pub. Acts 142, codified at Mich. Comp. Laws §§ 550.1731–1741, to generate the revenue necessary to fund Michigan's obligations under Medicaid.　The Act functions by imposing a one-percent tax on all "paid claims" by "carriers" or "third party administrators" to healthcare providers for services rendered in Michigan for Michigan residents.　§§ 550.1732(s), 550.1733(1).　"Carriers" include sponsors of "group health plan[s]" set up under the strictures of the Employee Retirement Income Security Act of 1974 ("ERISA"), Pub. L. No. 93–406, codified at 29 U.S.C. §§ 1002–1461.　Mich. Comp. Laws § 550.1732(a), (h).　On top of the tax, every carrier and third-party administrator paying the tax must submit quarterly returns with the Michigan Department of the Treasury and "keep accurate and complete records and pertinent documents as required by the department."　§§ 550.1734(1), 550.1735(1).　Every carrier and third-party administrator must also "develop and implement a methodology by which it will collect the [tax]" subject to several conditions.　§ 550.1733a(2).

In district court, SIIA filed suit against Rick Snyder, the Governor of Michigan; R. Kevin Clinton, the Director of the Michigan Office of Financial and Insurance Regulation ("OFIR"); and Andrew Dillon, Treasurer of Michigan. R. 1 at 1 (Compl.) (Page ID #1). SIIA sought a declaratory judgment, which would state that ERISA preempted the Act, and an injunction, which would prevent implementation and enforcement of the Act against the ERISA-covered entities. *Id.* The defendants filed a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) for failure to state a valid claim. R. 14 at 1 (Mot. to Dismiss) (Page ID #33). The district court granted this motion after concluding that the Act did not offend ERISA's express-preemption clause because the Act did not "'relate to'" an ERISA-governed benefit plan. R. 41 at 9 (Am. D. Ct. Order) (Page ID #480) (quoting 29 U.S.C. § 1144(a)). SIIA now appeals.

## II.  STANDARD OF REVIEW

We review de novo a district court's dismissal of a claim pursuant to Rule 12(b)(6). *Penny/Ohlmann/Nieman, Inc. v. Miami Valley Pension Corp.* ("*PONI*"), 399 F.3d 692, 697 (6th Cir. 2005). Whether ERISA preempts a state law is a question of federal law that we also review de novo. *Mackey v. Lanier Collection Agency & Serv., Inc.*, 486 U.S. 825, 830 (1988).

## III.  ANALYSIS

"Congress enacted ERISA to 'protect . . . the interests of participants in employee benefit plans and their beneficiaries' by setting out substantive regulatory requirements for employee benefit plans and to 'provid[e] for appropriate remedies, sanctions, and ready access to the Federal courts.'" *Aetna Health Inc. v. Davila*, 542 U.S. 200, 208 (2004) (quoting 29 U.S.C. § 1001(b)) (alteration and ellipses in original). Accordingly, ERISA makes plan administrators fiduciaries, *see* 29 U.S.C. § 1104; imposes liabilities on plan administrators, *see* § 1109; requires plan administrators to disclose specific information and to file reports with the Secretary of Labor, *see* § 1021(a), (b); mandates that plan administrators retain records for substantial periods of time, *see* § 1027; and creates an exclusive enforcement mechanism, *see* § 1132. Along with these burdens, however, the statute also seeks "to provide a uniform regulatory regime over employee benefit plans." *Davila*, 542 U.S. at 208; *see also Conkright v. Frommert*, 130 S. Ct. 1640, 1649 (2010). Thus, ERISA contains a broad preemption provision that "supersede[s] any

and all State laws insofar as they . . . relate to any employee benefit plan" that falls under the regulation of the comprehensive federal scheme. 29 U.S.C. § 1144(a).

The Supreme Court has called ERISA's express-preemption provision "broadly worded" and "deliberately expansive." *California Div. of Labor Standards Enforcement v. Dillingham Constr., N.A.*, 519 U.S. 316, 324 (1997) (internal quotation marks omitted). The Court, however, has found providing useful guidance in this area to be difficult and defining "relates to" to be a "frustrating" task. *N.Y. State Conference of Blue Cross & Blue Shield Plans v. Travelers Ins. Co.*, 514 U.S. 645, 656 (1995). We readily concur. The statutory text is simply "unhelpful" because "[i]f 'relate to' were taken to extend to the furthest stretch of its indeterminacy, then for all practical purposes pre-emption would never run its course, for '[r]eally, universally, relations stop nowhere.'" *Id.* at 655–56 (1995) (quoting Henry James, *Roderick Hudson* xli (New York ed., World's Classics 1980)); *see also Dillingham*, 519 U.S. at 335 (Scalia, J., concurring) ("[A]pplying the 'relate to' provision according to its terms was a project doomed to failure, since, as many a curbstone philosopher has observed, everything is related to everything else."). The best guidance that the Court has been able to give us is to say that "[a] law 'relates to' an employee benefit plan, in the normal sense of the phrase, if it has a connection with or reference to such a plan." *Shaw v. Delta Air Lines, Inc.*, 463 U.S. 85, 96–97 (1983).

SIIA contends that ERISA preempts the Act because the Act has an impermissible connection with employee benefit plans, namely that it (1) interferes with the administration of the plans; (2) imposes administrative burdens in addition to those prescribed by ERISA; and (3) interferes with the relationships between ERISA-covered entities. In their amicus briefs, the Iron Workers Health Fund of Eastern Michigan ("Iron Workers Fund") and the Detroit and Vicinity Trowel Trades Health and Welfare Fund ("Trowel Trades Fund") argue that the Act inappropriately references ERISA plans. The district court rejected both arguments. We agree and **AFFIRM** the dismissal of SIIA's claims.

## A. "Connection With"

We begin with SIIA's allegations that the Act has an impermissible connection with ERISA plans. The district court rejected this argument in its entirety, finding that the Act was a law of "'general applicability,'" R. 41 at 18 (D. Ct. Am. Order) (Page ID #489) (quoting *De*

*Buono v. NYSA-ILA Med. & Clinical Servs. Fund*, 520 U.S. 806, 820 (1997)), that "does not mandate any particular benefit structure or bind administrators to certain benefits choices," *id.* at 16 (Page ID #487). On appeal, SIIA makes several, slightly different arguments as to different sections of the statute, and we address each in turn.

### 1. Legal Standard

In determining whether a state law has an impermissible connection with ERISA plans, we start with the presumption that Congress did not intend to preempt state laws, particularly in areas of traditional state concern. *Travelers*, 514 U.S. at 654; *Associated Builders & Contractors v. Michigan Dep't of Labor & Economic Growth*, 543 F.3d 275, 280 (6th Cir. 2008) (citing *Dillingham*, 519 U.S. at 332). In this case, we are concerned with a state tax and its ancillary requirements, a type of law long recognized as an important "attribute of state sovereignty." *Firestone Tire & Rubber Co. v. Neusser*, 810 F.2d 550, 555 (6th Cir. 1987) (citing *County of Lane v. Oregon*, 74 U.S. (7 Wall.) 71, 76–77 (1869)); *see also Thiokol Corp. v. Roberts*, 76 F.3d 751, 755 (6th Cir. 1996) (citing *Fair Assessment in Real Estate Ass'n, Inc. v. McNary*, 454 U.S. 100, 103 (1981)). Therefore, the presumption applies with special force in this case, and overcoming it "requires two showings . . . : (1) the law at issue must mandate (or effectively mandate) something, and (2) that mandate must fall within the area that Congress intended ERISA to control exclusively." *Associated Builders*, 543 F.3d at 281.

All agree that "[t]he purpose of ERISA preemption was to avoid conflicting federal and state regulation and to create a nationally uniform administration of employee benefit plans." *PONI*, 399 F.3d at 698. In line with this congressional intent, we have held that "ERISA preempts state laws that (1) mandate employee benefit structures or their administration; (2) provide alternate enforcement mechanisms; or (3) bind employers or plan administrators to particular choices or preclude uniform administrative practice, thereby functioning as a regulation of an ERISA plan itself." *Id.* (internal quotation marks omitted). "Congress did not intend, however, for ERISA 'to preempt traditional state-based laws of general applicability that do not implicate the relations among the traditional ERISA plan entities, including the principals, the employer, the plan, the plan fiduciaries, and the beneficiaries.'" *Id.* (quoting *LeBlanc v. Cahill*, 153 F.3d 134, 147 (4th Cir. 1998)). In short, ERISA does not "create a state-law-free

zone around everything that affects an ERISA plan . . . ." *Associated Builders*, 543 F.3d at 284. Therefore, SIIA must show that the Act (1) "mandates an aspect of law with which ERISA is concerned," such as the administration of the plan itself, *id.* at 280, or (2) interferes with the relationship between ERISA-covered entities, *PONI*, 399 F.3d at 698.

### 2. The Act Does Not Interfere with Plan Administration

SIIA first claims that the Act interferes with uniform plan administration. This argument takes two forms. One, SIIA focuses upon the Act's definition of "paid claims" and argues that the state law's definition of a claim may conflict with a plan's definition of a claim. Appellant Br. at 35–36; *see also* Mich. Comp. Laws § 550.1732(s) (defining "Paid claims"). Two, SIIA argues that the Act's reporting and record-keeping requirements jeopardize "uniform administrative practice." Appellant Br. at 29; *see also* Mich. Comp. Laws §§ 550.1734, 550.1735. However, for all of the pages that SIIA devotes to documenting ERISA's concern with uniformity, SIIA never actually explains how the Act changes or interferes with plan administration. In reality, the Act does not require a plan administrator to change how it administers the plan at all, and thus, this argument fails.

To start, SIIA fails to grasp that ERISA guarantees uniformity only with regard to the "administration *of employee benefit plans*." *PONI*, 399 F.3d at 698 (emphasis added). Neither the Act's definition of "paid claims" nor its reporting and record-keeping requirements conflict with the administrator's "standard procedures to guide processing of claims and disbursement of benefits."[1] *Fort Halifax Packing Co. v. Coyne*, 482 U.S. 1, 9 (1987); *see also Aetna Life Ins. Co. v. Borges*, 869 F.2d 142, 146–47 (2d Cir. 1989) ("What triggers ERISA preemption is not just any indirect effect on administrative procedures but rather an effect on the primary administrative functions of benefit plans, such as determining an employee's eligibility for a benefit and the amount of that benefit."). The state's definition of "paid claims" applies, and the

---

[1]For that matter, the Act does not mandate that a plan provide certain kinds of benefits either. *See De Buono v. NYSA-ILA Medical & Clinical Servs. Fund*, 520 U.S. 806, 815 n.13 (1997) (citing *Shaw*, 463 U.S. 85). Nor does the Act force a plan to provide a certain level of benefits. *See Retail Indus. Leaders Ass'n v. Fielder*, 475 F.3d 180, 193 (4th Cir. 2007). Nor does it require an administrator to pay benefits to someone not specified by the plan, *see Egelhoff v. Egelhoff*, 532 U.S. 141, 150 (2001), to calculate benefits in a certain manner, *see Alessi v. Raybestos-Manhattan, Inc.*, 451 U.S. 504, 524–25 (1981), or to act as a beneficiary's agent, *see UNUM Life Ins. Co. of Am. v. Ward*, 526 U.S. 358, 379 (1999).

state's reporting and record-keeping requirements come into play, only when the carriers compute the tax—a function entirely divorced from plan administration. The Act's provisions simply do not conflict with the plan or impact its administration. *See Metropolitan Life Ins. Co. v. Massachusetts*, 471 U.S. 724, 739 (1985) (noting that ERISA "displace[s] all state laws that *fall within its sphere*" (emphasis added)). The Act's only potential effects are to cut the plans' profits—as did the surcharges upheld in *Travelers* and *De Buono*—and to create work independent of the core functions of ERISA—as do permissible state property and employment laws. *See Thiokol*, 76 F.3d at 755 ("[T]he Supreme Court does not require that state laws have absolutely zero effect on ERISA plans, for this likely would be impossible as a matter of logic or practicality. State property, contract, and tort law all surely have some effect on ERISA plans, but they are not pre-empted."); *Firestone*, 810 F.2d at 555.

At oral argument and in its briefing, SIIA relied heavily upon *Egelhoff v. Egelhoff*, 532 U.S. 141 (2001), in support of its view. But that case ultimately cuts against SIIA. In *Egelhoff*, the Supreme Court did state that "[o]ne of the principal goals of ERISA is to enable employers to establish a uniform administrative scheme," but, importantly, it defined that scheme as the "set of standard procedures *to guide processing of claims and disbursement of benefits*." *Id.* at 148 (internal quotation marks omitted) (emphasis added). The state law at issue in *Egelhoff* directed ERISA plans to disburse benefits according to state law, rather than the plan documents. *Id.* at 147. The Court struck down this statute because it "directly conflict[ed] with ERISA's requirements that *plans be administered*, and *benefits be paid*, in accordance with plan documents." *Id.* at 150 (emphasis added). If the Act involved here altered which benefits were offered, how they were calculated, or to whom they were dispersed, under *Egelhoff*, it would be preempted. It does none of these things; it has no impact upon plan administration, as the Court has defined that concept. Thus, *Egelhoff* does not compel us to hold the Act preempted for interfering with plan administration.

### 3. The Act Does Not Create Inappropriate Administrative Burdens

Next, SIIA argues that ERISA preempts §§ 550.1734 and 550.1735 of the Act, which require carriers and third-party administrators to file reports and to keep certain records, because they allegedly add to ERISA's administrative requirements. There is no doubt that Congress

intended for plan administrators to file various reports and to maintain the records that serve as the basis for those reports. *See* 29 U.S.C. §§ 1021, 1027. The question is whether Congress intended these ERISA provisions to preclude states from enacting laws imposing administrative burdens—of any kind—upon plan administrators and sponsors unrelated to the administration of the plans. *See Travelers*, 514 U.S. at 655; *Silkwood v. Kerr-McGee Corp.*, 464 U.S. 238, 248–49 (1984). Logic and case law require us to answer that question in the negative.

Here, principles of field preemption guide our inquiry into congressional intent. *See Dillingham*, 519 U.S. at 336 (Scalia, J., concurring). Under this doctrine,

> Congress' intent to supersede state law altogether may be inferred because "[t]he scheme of federal regulation may be so pervasive as to make reasonable the inference that Congress left no room for the States to supplement it," because "the Act of Congress may touch a field in which the federal interest is so dominant that the federal system will be assumed to preclude enforcement of state laws on the same subject," or because "the object sought to be obtained by federal law and the character of obligations imposed by it may reveal the same purpose."

*Fidelity Fed. Sav. & Loan Ass'n v. de la Cuesta*, 458 U.S. 141, 153 (1982) (quoting *Rice v. Santa Fe Elevator Corp.*, 331 U.S. 218, 230 (1947)) (alteration in original).

In this case, it is clear that Congress intended ERISA to preempt state laws providing for additional oversight with regard to the solvency of ERISA plans. The Supreme Court has recognized that "ERISA is designed to ensure the proper administration of pension and welfare plans, both during the years of the employee's active service and in his or her retirement years." *Boggs v. Boggs*, 520 U.S. 833, 839 (1997). In other words, "ERISA is principally concerned with protecting the financial security of plan participants and beneficiaries." *National Sec. Sys., Inc. v. Iola*, 700 F.3d 65, 81 (3d Cir. 2012) (citing *Boggs*, 520 U.S. at 845; *Shaw*, 463 U.S. at 90); *see also Hamilton v. Washington State Plumbing & Pipefitting Indus. Pension Plan*, 433 F.3d 1091, 1095 (9th Cir. 2006). "To this end, the statute sets forth detailed disclosure and reporting obligations for plans and imposes various participation, vesting, and funding requirements." *Iola*, 700 F.3d at 81 (referencing, *inter alia*, 29 U.S.C. §§ 1021, 1027). In the language of *Fidelity Federal*, this scheme is "pervasive," and therefore, we conclude that Congress intended to ERISA to preempt state laws requiring ERISA entities to file reports related to the plans' financial stability.

This basic conclusion, however, does not mean that Congress intended federal law to bar states from imposing additional administrative burdens unrelated to the plans' core functions. In fact, several cases indicate to us that the opposite is true. First, in *Travelers*, the Supreme Court upheld a New York law that required ERISA-covered hospitals to collect surcharges from certain patients. 514 U.S. at 649. That law also required the hospitals to "furnish to the [state tax] department such reports and information as may be required by the commissioner to assess the cost, quality and health system needs for medical education provided." N.Y. Pub. Health Law § 2807-c(25)(b) (McKinney 1993). Second, in *De Buono*, the Supreme Court upheld another New York law that "impos[ed] a gross receipts tax on the income of medical centers operated by ERISA funds." 520 U.S. at 809. That law required "[e]very hospital [to] submit reports on a cash basis of actual gross receipts received from all patient care services . . . ." N.Y. Pub. Health Law § 2807-d(7)(a) (McKinney 1993). Admittedly, neither *Travelers* nor *De Buono* explicitly concerned reporting requirements regarding the taxes, but those requirements were essential parts of the tax schemes and drew no comment. While we are generally slow to infer approval through silence, in this case we think it merited given that the Supreme Court had previously refused to find a Georgia statute preempted merely because it imposed "substantial administrative burdens." *Mackey*, 486 U.S. at 831.

Finally, under SIIA's logic, states would not be able to require ERISA-covered entities to submit any paperwork or preserve any records in any circumstances. As a result, ERISA would preempt any state laws requiring ERISA-covered entities to submit income-tax returns, property-tax returns, or employment records. We have said, time and again, that ERISA does not reach so far. *See, e.g.*, *Thiokol*, 76 F.3d at 755; *Firestone*, 810 F.2d at 555–56; *see also De Buono*, 520 U.S. at 816 ("Any state tax, or other law, that increases the cost of providing benefits to covered employees will have some effect on the administration of ERISA plans, but that simply cannot mean that every state law with such an effect is preempted by the federal statute."). We see no reason to change course now.

SIIA's arguments to the contrary are unpersuasive. To start, it points us toward *NGS American, Inc. v. Barnes*, 998 F.2d 296 (5th Cir. 1993), in which the Fifth Circuit held that ERISA preempted Article 21.07-6 of the Texas Insurance Code. *Id.* at 299. The scope and

substance of Article 21.07-6, however, are a far cry from the requirements of the Act involved here. Article 21.07-6 mandated the inclusion of certain terms in the plan, Tex. Ins. Code Ann. art. 21.07-6, §§ 11, 16 (West 1993); it set a timeframe for adjudicating claims, *id.* at § 17; and it gave the state access to information for the purpose of judging the plan's financial soundness, *id.* at § 8. Each of these requirements plainly offends a core aspect of ERISA. In particular, Article 21.07-6 requires reporting related to the plan's financial solvency, a requirement clearly within ERISA's sphere. The Act here requires none of this. To the extent that the Act requires reporting and record-keeping, it is only to guarantee that the carriers pay the correct amount of tax. *See* Mich. Comp. Laws §§ 550.1734(1), 550.1735(1)–(3). As noted above, such record-keeping requirements accompany all taxes and remain in force despite ERISA. Accordingly, we find *Barnes* to be factually distinct from the situation here.

SIIA also cites *Liberty Mutual Insurance Co. v. Donegan*, 746 F.3d 497 (2d Cir. 2014). In *Liberty Mutual*, a divided panel of the Second Circuit held that ERISA preempted a Vermont statute that requires "all health insurers (including self-insured plans) to file with the State reports containing claims data and other information relating to health care." *Id.* at 499 (referencing Vt. Stat. Ann. tit. 18, § 9410) (internal quotation marks omitted). This data included highly sensitive and extensive information on the types of services provided, the demographics of the beneficiaries, and the patients' diagnoses—all of which had to be collected, coded, and reported in a particular manner. *Id.* at 509. The Second Circuit based its holding on "the principle (undisturbed by *Travelers*) that 'reporting' is a core ERISA function shielded from potentially inconsistent and burdensome state regulation." *Id.* at 508. For the reasons explained above, we disagree with this literal approach to preemption. And as Judge Straub stated in dissent, "the majority's argument misses the nuance of what 'reporting' means in the context of ERISA, and ignores the case law's focus on whether the *administration of benefits to beneficiaries* is impacted, an issue on which there is no showing." *Id.* at 512 (Straub, J., dissenting).

In addition, *Liberty Mutual* can be distinguished on two other grounds. One, here the Act's reporting requirements are intimately related to a state tax—a traditional area of state concern that we presume Congress left untouched. In contrast, the Vermont statute mandates

reporting to build a healthcare database, a purpose not entitled to the presumption. Two, according to the Second Circuit, the Vermont statute effectively gave the ERISA plan a choice: (1) allow its third-party administrator to turn over the data in violation of its plan document, which protected beneficiaries' privacy; or (2) direct the third-party administrator not to comply with the law and then indemnify it according to their contract. *Id.* at 502; *see also id.* at 502 n.4 (relying upon floor statements of individual members of Congress). Under our conception of the ERISA preemption provision, state laws cannot put this choice to the ERISA-covered entities. The Vermont scheme actually affects the administration of the plans; it does not just create additional administrative work unrelated to the processing of the claims, as the Act involved here does. For these reasons, we do not find *Liberty Mutual* persuasive or helpful. As a result, we are not persuaded by SIIA's counterarguments, and we hold that ERISA does not preempt §§ 550.1734 and 550.1735 of the Act.

### 4. The Act's Residency Requirement Does Not Interfere with the Relationships Between ERISA-Covered Entities

SIIA's next claim is that the Act's limitation of the tax to claims paid on behalf of Michigan residents effectively alters the relationship between plan administrators and plan beneficiaries because the requirement forces the administrators to collect additional information from beneficiaries. We disagree.

Under Michigan law, an individual is a Michigan resident if the individual considers the state her domicile. Mich. Admin. Code § 550.404(1). Domicile, perhaps problematically, is a subjective determination. § 550.404(2). SIIA fears that administrators will need to ask a beneficiary which state she considers "her fixed, permanent and principal home . . ." to comply with the Act, a change in their relationship and potentially burdensome in the aggregate. *Id.* If this were an accurate recitation of the current state of the law, we might be inclined to agree that the residency requirement alters the ERISA-covered entities' relationships in form, if not substance. But the same regulation that problematically defines residency also obviates the need for a carrier to communicate with the beneficiaries. Section 550.404(3) of the Michigan Administrative Code states in full:

> A rebuttable presumption shall exist that an individual's home address, as maintained in the ordinary business records of a carrier or third-party

administrator, indicates the domicile of that individual under this definition. Example: An individual who is domiciled in Michigan, but attends college in another state, is a Michigan resident for purposes of the Act. If that individual obtains health services in Michigan while home between semesters, a "paid claim" for the performance of those services will be subject to the assessment under the Act.

By defining residency by reference to the administrators' already-existing business records, Michigan leaves the relationship between ERISA-covered entities untouched. As a result, we do not believe Congress intended ERISA to preempt the Act's residency requirement.[2]

### 5. Section 550.1733a Does Not Interfere with the Relationships Between ERISA-Covered Entities

SIIA finally argues that Michigan Compiled Laws § 550.1733a(2) requires carriers and third-party administrators to alter their relationship with ERISA-covered entities by mandating that carriers and third-party administrators collect the tax from them. We disagree. Section 550.1733a(2) states: "[a] carrier or third party administrator shall develop and implement a methodology by which it will collect the assessment levied under [the Act] from an individual, employer, or group health plan, subject to [certain conditions]." Importantly, Michigan has interpreted this section of its statute to say "the collection of the assessment from these parties by carriers and third-party administrators is permissive." Mich. Admin. Code § 550.402(1). Under this interpretation, § 550.1733a(2) does not force carriers and third-party administrators to change their plan documents. Therefore, there is no ERISA-preemption issue.

### B. "Refers To"

The Iron Workers Fund and the Trowel Trades Fund ask us to hold that the Act makes an inappropriate reference to ERISA-regulated employee benefit plans, triggering the operation of § 1144(a). Regardless of the merits of this contention, there is a procedural problem: SIIA has explicitly waived this argument. Amici cannot revive it.

---

[2]We recognize that each of the fifty states might enact similar taxes and that multiple states could potentially claim an individual, perhaps a student, as a resident. This scenario could be burdensome to ERISA-covered entities. This state of affairs, however, is hypothetical and not before us at this point. We prefer to rule based on concrete facts rather than a blind appraisal of future events, but we note in passing that each of the fifty states has its own property, income-tax, and employment laws that act upon ERISA-covered entities and are not preempted. It is unclear whether these residency requirements would be any different.

In its opening brief, SIIA forthrightly states that "[it] does not appeal the District Court's conclusion that the Act does not have a 'reference to' ERISA plans." Appellant Br. at 28. By conceding this issue, SIIA has waived it, and this waiver generally precludes us from considering the issue. *See, e.g.*, *Demyanovich v. Cadon Plating & Coatings, LLC*, 747 F.3d 419, 434 n.6 (6th Cir. 2014); *Bickel v. Korean Air Lines Co.*, 96 F.3d 151, 153 (6th Cir. 1996). Furthermore, we have stated that "[w]hile an amicus may offer assistance in resolving issues properly before a court, it may not raise additional issues or arguments not raised by the parties. To the extent that the amicus raises issues or makes arguments that exceed those properly raised by the parties, we may not consider such issues." *Cellnet Commc'ns, Inc. v. FCC*, 149 F.3d 429, 443 (6th Cir. 1998); *see also New Jersey v. New York*, 523 U.S. 767, 781 n.3 (1998) (stating that courts "must pass over" arguments of amici that the named party to the case "has in effect renounced"); 16AA Charles Alan Wright et al., *Federal Practice & Procedure* § 3975.1 (4th ed. 2008) ("In ordinary circumstances, an amicus will not be permitted to raise issues not argued by the parties."). Otherwise, outside parties could hijack litigation quite easily. Therefore, to avoid this result, we hold that SIIA has waived this issue and, therefore, decline to consider its validity.

## IV. CONCLUSION

For the above-stated reasons, we **AFFIRM** the district court's dismissal of SIIA's claims.