RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)

File Name: 16a0152p.06

# UNITED STATES COURT OF APPEALS

### FOR THE SIXTH CIRCUIT

―――――――――――

SELF-INSURANCE INSTITUTE OF AMERICA, INC.,
                              *Plaintiff-Appellant,*

   *v.*                                                              No. 12-2264

RICK SNYDER, in his official capacity as Governor
of the State of Michigan; R. KEVIN CLINTON, in his
official capacity as Director of the Office of
Financial and Insurance Regulation of the State of
Michigan; ANDREW DILLON, in his official capacity
as Treasurer of the State of Michigan,
                              *Defendants-Appellees.*

―――――――――――

On Remand from the United States Supreme Court.
No. 2:11-cv-15602—Julian A. Cook, District Judge.

Decided and Filed:  July 1, 2016

Before:  BOGGS and MOORE, Circuit Judges; BARRETT, District Judge.[*]

―――――――――――

## COUNSEL

**ON BRIEF:**  Stephen Wasinger, STEPHEN F. WASINGER PLC, Royal Oak, Michigan, John H. Eggertsen, EGGERTSEN CONSULTING PC, Ann Arbor, Michigan, for Appellant.  John J. Bursch, Aaron D. Lindstrom, OFFICE OF THE MICHIGAN ATTORNEY GENERAL, Lansing, Michigan, for Appellees.

―――――――――――

[*]The Honorable Michael R. Barrett, United States District Judge for the Southern District of Ohio, sitting by designation.

---

**OPINION**

---

KAREN NELSON MOORE, Circuit Judge.   This case requires us, once again, to navigate the quagmire that is preemption.  Plaintiff-Appellant, which represents various sponsors and administrators of self-funded ERISA benefit plans, argues that federal law—the Supremacy Clause, U.S. Const. art. VI, § 2, and ERISA's express-preemption provision, 29 U.S.C. § 1144(a)—prohibits the application of a Michigan statute to ERISA-covered entities.   The Michigan statute, however, escapes the preemptive reach of federal law, and we **AFFIRM** the district court's dismissal of the suit.

## I. BACKGROUND

In 2011, Michigan passed the Health Insurance Claims Assessment Act ("the Act" or "the Michigan Act"), 2011 Mich. Pub. Acts 142, codified at Mich. Comp. Laws §§ 550.1731–1741, to generate the revenue necessary to fund Michigan's obligations under Medicaid.   The Act imposes a one-percent tax on all "paid claims" by "carriers" or "third party administrators" for services rendered in Michigan for Michigan residents.  §§ 550.1732(s), 550.1733(1).  The Act defines "[p]aid claims" as "actual payments . . . made to a health and medical services provider or reimbursed to an individual by a carrier, third party administrator, or excess loss or stop loss carrier."  § 550.1732(s).  "Carriers" include sponsors of "group health plan[s]" set up under the strictures of the Employee Retirement Income Security Act of 1974 ("ERISA"), Pub. L. No. 93–406, codified at 29 U.S.C. §§ 1002–1461, and "third party administrators" refers to entities that process claims for other entities.   Mich. Comp. Laws § 550.1732(a), (h), (v).   In order to facilitate the tax, every carrier and third-party administrator must submit quarterly returns to the Michigan Department of the Treasury and "keep accurate and complete records and pertinent documents as required by the department," §§ 550.1734(1), 550.1735(1), as well as "develop and implement a methodology by which it will collect the [tax]" subject to several conditions, § 550.1733a(2).

Self-Insurance Institute of America, Inc. ("SIIA") filed suit in the United States District Court for the Eastern District of Michigan against Rick Snyder, the Governor of Michigan; R. Kevin Clinton, the Director of the Michigan Office of Financial and Insurance Regulation; and Andrew Dillon, the Treasurer of Michigan.  R. 1 (Compl.) (Page ID #1).  SIIA sought a declaratory judgment, which would state that ERISA preempted the Act, and an injunction, which would prevent implementation and enforcement of the Act against the ERISA-covered entities.  *Id.*  The defendants filed a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim.  R. 14 (Mot. to Dismiss) (Page ID #33).  The district court granted this motion after concluding that the Act did not offend ERISA's express-preemption clause because the Act did not "relate to" an ERISA-governed benefit plan.  R. 41 (Am. Dist. Ct. Order at 8–19) (Page ID #479–90).  SIIA appealed, and we affirmed the district court's dismissal of the suit.  *Self-Ins. Inst. of Am., Inc. v. Snyder*, 761 F.3d 631, 641 (6th Cir. 2014), *cert. granted, judgment vacated*, 136 S. Ct. 1355 (2016) (mem.).  The Supreme Court entered an order granting certiorari, vacating the judgment of this court, and remanding the case for further consideration in light of *Gobeille v. Liberty Mut. Ins. Co.*, 136 S. Ct. 936 (2016).  *Self-Ins. Inst. of Am., Inc. v. Snyder*, 136 S. Ct. 1355 (2016) (mem.).  After careful consideration, we once again affirm the district court's dismissal of the suit.

## II.  STANDARD OF REVIEW

We review de novo a district court's dismissal of a claim pursuant to Rule 12(b)(6).  *Penny/Ohlmann/Nieman, Inc. v. Miami Valley Pension Corp.* ("*PONI*"), 399 F.3d 692, 697 (6th Cir. 2005).  Whether ERISA preempts a state law is a question of federal law that we also review de novo.  *See Mackey v. Lanier Collection Agency & Serv., Inc.*, 486 U.S. 825, 830 (1988).

## III.  ANALYSIS

"Congress enacted ERISA to 'protect . . . the interests of participants in employee benefit plans and their beneficiaries' by setting out substantive regulatory requirements for employee benefit plans and to 'provid[e] for appropriate remedies, sanctions, and ready access to the Federal courts.'"  *Aetna Health Inc. v. Davila*, 542 U.S. 200, 208 (2004) (alteration and ellipses in original) (quoting 29 U.S.C. § 1001(b)).  Accordingly, ERISA establishes a regulatory regime

that makes plan administrators fiduciaries, *see* 29 U.S.C. § 1104; imposes liabilities on plan administrators that breach their fiduciary duties, *see* § 1109; requires plan administrators to disclose specific information and to file reports with the Secretary of Labor, *see* § 1021(a), (b); mandates that plan administrators retain records for substantial periods of time, *see* § 1027; and creates an exclusive mechanism to enforce these guarantees, *see* § 1132. Because Congress intended these systems and procedures to be uniform, *Davila*, 542 U.S. at 208, ERISA contains an express-preemption provision that "supersede[s] any and all State laws insofar as they . . . relate to any employee benefit plan" that falls under this comprehensive federal scheme, 29 U.S.C. § 1144(a).

The Supreme Court has called ERISA's express-preemption provision "deliberately expansive." *California Div. of Labor Standards Enforcement v. Dillingham Constr., N.A.*, 519 U.S. 316, 324 (1997) (internal quotation marks omitted). The Court, however, has found defining the provision's phrase "relate to" to be a "frustrating" task. *N.Y. State Conference of Blue Cross & Blue Shield Plans v. Travelers Ins. Co.*, 514 U.S. 645, 656 (1995) (internal quotation marks omitted). We readily concur. ERISA's statutory text is "unhelpful" because "[i]f 'relate to' were taken to extend to the furthest stretch of its indeterminacy, then for all practical purposes pre-emption would never run its course, for '[r]eally, universally, relations stop nowhere.'" *Id.* at 655–56 (quoting Henry James, *Roderick Hudson* xli (New York ed., World's Classics 1980)); *see also Dillingham*, 519 U.S. at 335 (Scalia, J., concurring) ("[A]pplying the 'relate to' provision according to its terms was a project doomed to failure, since, as many a curbstone philosopher has observed, everything is related to everything else."). Thus, the Court has eschewed "uncritical literalism," *Travelers*, 514 U.S. at 656, and embraced a common-sense approach: "A law 'relates to' an employee benefit plan . . . if it has a connection with or reference to such a plan," *Shaw v. Delta Air Lines, Inc.*, 463 U.S. 85, 96–97 (1983).

Both methods of establishing that a state law relates to an employee benefit plan— "connection with" and "reference to"—are advanced by SIIA and amici. SIIA contends that ERISA preempts the Michigan Act because the Act has a connection with ERISA plans. And in their amicus briefs, the Iron Workers Health Fund of Eastern Michigan ("Iron Workers Fund") and the Detroit and Vicinity Trowel Trades Health and Welfare Fund ("Trowel Trades Fund")

contend that the Act inappropriately references ERISA plans.  The district court rejected both arguments.  We agree and **AFFIRM** the dismissal of SIIA's claims.

**A. "Connection With"**

In determining whether a state law has an impermissible connection with ERISA plans, we start with the presumption that Congress generally does not intend to preempt state laws, particularly in areas of traditional state concern.  *Travelers*, 514 U.S. at 654–55; *Associated Builders & Contractors v. Michigan Dep't of Labor & Economic Growth*, 543 F.3d 275, 280 (6th Cir. 2008) (citing *Dillingham*, 519 U.S. at 332).  As we have recognized, "traditional state-based laws of general applicability that do not implicate the relations among the traditional ERISA plan entities, including the principals, the employer, the plan, the plan fiduciaries, and the beneficiaries" are not implicated by ERISA's express-preemption provision.  *PONI*, 399 F.3d at 698 (internal quotation marks omitted).  ERISA, in other words, does not "create a state-law-free zone around everything that affects an ERISA plan."  *Associated Builders*, 543 F.3d at 284.

Here, we are concerned with a state tax and its ancillary requirements, a type of law long recognized as an important "attribute of state sovereignty."  *Firestone Tire & Rubber Co. v. Neusser*, 810 F.2d 550, 555 (6th Cir. 1987) (citing *County of Lane v. Oregon*, 74 U.S. (7 Wall.) 71, 76–77 (1869)); *see also Thiokol Corp. v. Roberts*, 76 F.3d 751, 754–55 (6th Cir. 1996) (concluding that a Michigan tax escaped preemption in part because "federal courts must give due respect to 'the fundamental principle of comity between federal courts and state governments that is essential to 'Our Federalism,' particularly in the area of state taxation'" (quoting *Fair Assessment in Real Estate Ass'n v. McNary*, 454 U.S. 100, 103 (1981))).  Therefore, the presumption that Congress does not intend to preempt state laws applies with special force in this case, and overcoming it "requires two showings . . . :  (1) the law at issue must mandate (or effectively mandate) something, and (2) that mandate must fall within the area that Congress intended ERISA to control exclusively."[1]  *Associated Builders*, 543 F.3d at 281.

---

[1]Of course, state tax laws are not exempted from ERISA's express-preemption provision, see 29 U.S.C. § 1144(b)(5)(B)(i), but they do benefit from the presumption that Congress generally does not intend to preempt state laws in areas of traditional state concern.

With this presumption in mind, we turn to the merits of SIIA's claim. A law "has an impermissible 'connection with' ERISA plans" when it "'governs . . . a central matter of plan administration' or 'interferes with nationally uniform plan administration.'" *Gobeille*, 136 S. Ct. at 943 (omission in original) (quoting *Egelhoff v. Egelhoff*, 532 U.S. 141, 148 (2001)). Thus, we have held that ERISA preempts state laws that "mandate employee benefit structures or their administration," "provide alternate enforcement mechanisms," or "bind employers or plan administrators to particular choices or preclude uniform administrative practice, thereby functioning as a regulation of an ERISA plan itself." *PONI*, 399 F.3d at 698 (internal quotation marks omitted). "A state law also might have an impermissible connection with ERISA plans if 'acute, albeit indirect, economic effects' of the state law 'force an ERISA plan to adopt a certain scheme of substantive coverage or effectively restrict its choice of insurers.'" *Gobeille*, 136 S. Ct. at 943 (quoting *Travelers*, 514 U.S. at 668). SIIA argues that the Michigan Act has an impermissible connection with ERISA plans because it imposes administrative burdens in addition to those prescribed by ERISA, interferes with uniform plan administration, and intrudes upon the relationships between ERISA-covered entities.

## 1. The Act Does Not Impose Additional Burdens or Interfere with Uniform Plan Administration

SIIA contends that by requiring carriers and third-party administrators to file reports and maintain certain records, the Act both creates additional burdens and jeopardizes uniform administrative practice. Appellant Br. at 29–34; *see also* Mich. Comp. Laws §§ 550.1734(1), 550.1735(1). According to SIIA, the Act's definition of "paid claims" also interferes with uniform administrative practice because it could conflict with a plan's definition of "paid claims" (though SIIA does not contend that it *does* conflict with a plan's definition of "paid claims"). Appellant Br. at 35–36; *see also* Mich. Comp. Laws § 550.1732(s). Because these arguments are related, and because they are foreclosed for the same reason, we analyze them together.

Broadly worded as it is, ERISA's express-preemption provision extends only to the *administration of employee benefit plans*. *See Travelers*, 514 U.S. at 656–57. Indeed, the purpose of the provision is to create a "nationally uniform administration of employee benefit plans." *Id.* at 657; *see also Aetna Life Ins. Co. v. Borges*, 869 F.2d 142, 146 (2d Cir. 1989)

("What triggers ERISA preemption is not just any indirect effect on administrative procedures but rather an effect on the primary administrative functions of benefit plans."). Though *Gobeille* recognized that "reporting, disclosure, and recordkeeping are central to, and an essential part of, the uniform system of plan administration contemplated by ERISA," it held that only state laws that directly regulate these aspects of ERISA—whether by imposing additional administrative burdens or by interfering with uniform administration—are preempted. 136 S. Ct. at 945–46. It is this limitation that ultimately forecloses SIIA's arguments.

*Gobeille* involved a Vermont law that "require[d] health insurers, health care providers, health care facilities, and governmental agencies to report any information relating to health care costs, prices, quality, utilization, or resources required by the state agency, including data relating to health insurance claims and enrollment." *Id.* at 941 (internal quotation marks omitted). The State intended to use this information to "maintain an all-inclusive health care database" which would function as "a resource for insurers, employers, providers, purchasers of health care, and State agencies to continuously review health care utilization, expenditures, and performance in Vermont." *Id.* at 940–41 (internal quotation marks omitted). Much of this information was highly sensitive (the Second Circuit observed that it included member demographics and clinical diagnoses, *Liberty Mut. Ins. Co. v. Donegan*, 746 F.3d 497, 509 (2d Cir. 2014)), which gave rise, at least in part, to the complaint. Liberty Mutual Insurance Company, which operated a self-insured employee benefits plan, was "concerned . . . that the disclosure of confidential information regarding its members might violate its fiduciary duties" under ERISA and so filed a suit asking for a declaratory judgment that the law was preempted. *Gobeille*, 136 S. Ct. at 942.

After examining "ERISA's reporting, disclosure, and recordkeeping requirements for welfare benefit plans"—and determining that they "are extensive"—the Supreme Court held that the Vermont law was preempted. *Id.* at 943–45. The Court explained that "Vermont's reporting regime, which compels plans to report detailed information about claims and plan members, both intrudes upon 'a central matter of plan administration' and 'interferes with nationally uniform plan administration.'" *Id.* at 945 (quoting *Egelhoff*, 532 U.S. at 148). Crucially, the Court characterized the Vermont law as a "direct regulation of a fundamental ERISA function." *Id.* at

946. And although the Court acknowledged the "presumption that Congress does not intend to supplant state law, in particular state laws regulating a subject of traditional state power," the Court stated that "ERISA pre-empts a state law that regulates a key facet of plan administration even if the state law exercises a traditional state power." *Id.* (internal quotation marks omitted). The Court was careful to note, however, that "[t]he analysis may be different when applied to a state law, such as a tax on hospitals, *see De Buono v. NYSA-ILA Med. & Clinical Servs. Fund*[], the enforcement of which necessitates incidental reporting by ERISA plans." *Id.*

The Court's citation to *De Buono* is significant. *De Buono* upheld a New York law that "impos[ed] a gross receipts tax on the income of medical centers operated by ERISA funds." *De Buono*, 520 U.S. 806, 809 (1997). That law required "[e]very hospital [to] submit reports on a cash basis of actual gross receipts received from all patient care services." N.Y. Pub. Health Law § 2807-d(7)(a) (McKinney 1993). Just two years prior to *De Buono*, in *Travelers*, the Supreme Court upheld another New York law that mandated that ERISA-covered hospitals collect surcharges from certain patients. *Travelers*, 514 U.S. at 649. That law also required the hospitals to "furnish to the [state tax] department such reports and information as may be required by the commissioner to assess the cost, quality and health system needs for medical education provided." N.Y. Pub. Health Law § 2807-c(25)(b) (McKinney 1993). Although *De Buono* and *Travelers* did not explicitly concern reporting requirements regarding the taxes, those requirements were essential parts of the tax schemes and drew no comment from the Court. We had previously assumed, accordingly, that laws necessitating incidental reporting did not implicate ERISA's express-preemption provision. *Gobeille* confirms our assumption.

*Gobeille*'s citation to *De Buono* reinforces the difference between a state law that directly regulates integral aspects of ERISA plan administration and a state law that touches on these aspects only peripherally. It also places *Gobeille* in context, recognizing that although the reporting and record-keeping requirements in *Gobeille* warranted preemption, laws that impose only incidental reporting—such as the ones at issue in *De Buono* and *Travelers*—should be analyzed differently. Thus, there are two critical points that we take away from *Gobeille*, in addition to the Court's statement that reporting, disclosure, and record-keeping are fundamental functions of ERISA: first, *Gobeille* held that only direct regulations of fundamental functions

are preempted, and second, state laws imposing incidental burdens may need to be evaluated under the principles established by *De Buono* and *Travelers*.

Both of these points counsel against preemption in this case. Michigan's Act does not directly regulate any integral aspects of ERISA. The Act is, at its core, an Act to generate the revenue necessary to fund Michigan's obligations under Medicaid. Though it does touch upon reporting and record-keeping, the thrust of the Act is to collect taxes—not to amass data. *See* Mich. Comp. Laws § 550.1733(1). As explained above, the Act levies on "every carrier and third party administrator an assessment of 1% on that carrier's or third party administrator's paid claims,"[2] defining "[p]aid claims" as "actual payments . . . made to a health and medical services provider or reimbursed to an individual by a carrier, third party administrator, or excess loss or stop loss carrier." §§ 550.1732(s), 550.1733(1). In order to facilitate collection of the tax, the Act requires every carrier and third-party administrator with paid claims subject to the tax to submit quarterly returns to the Michigan Department of the Treasury. § 550.1734(1). The Act also states that carriers or third-party administrators liable for the tax must "keep accurate and complete records and pertinent documents as required by the department." § 550.1735(1). These provisions are not direct regulations of employee benefit plans. Rather, they are peripheral requirements that do not warrant preemption. Therefore, this case falls in the *De Buono* and *Travelers* category of state laws that necessitate incidental reporting and record-keeping and thus are not preempted—as opposed to the *Gobeille* category of state laws preempted by ERISA because they directly regulate ERISA's essential reporting and record-keeping functions.

The Act's only other potential effects on employee benefit plans are to cut the plans' profits—as did the surcharges upheld in *De Buono* and *Travelers*—and to create work independent of the core functions of ERISA—as do permissible state property, contract, and tort laws. *See Thiokol*, 76 F.3d at 755 ("[T]he Supreme Court does not require that state laws have absolutely zero effect on ERISA plans, for this likely would be impossible as a matter of logic or practicality. State property, contract, and tort law all surely have some effect on ERISA plans,

---

[2]The tax is 0.75% for paid claims based on services rendered from July 1, 2014 to July 1, 2020. Mich. Comp. Laws § 550.1733(1).

but they are not pre-empted."); *Firestone*, 810 F.2d at 555 ("[T]he Supreme Court has indicated that state laws having only a tangential effect on an ERISA plan will not be preempted." (citing *Shaw*, 463 U.S. at 100 n.21)).

Finally, under SIIA's logic, states would not be able to require ERISA-covered entities to submit any paperwork or preserve any records in any circumstances. As a result, ERISA would preempt any state laws requiring ERISA-covered entities to submit income-tax returns, property-tax returns, or employment records. We have said, time and again, that ERISA does not reach so far. *See, e.g.*, *Thiokol*, 76 F.3d at 755; *Firestone*, 810 F.2d at 555–56; *see also De Buono*, 520 U.S. at 816 ("Any state tax, or other law, that increases the cost of providing benefits to covered employees will have some effect on the administration of ERISA plans, but that simply cannot mean that every state law with such an effect is preempted by the federal statute."). We see no reason to change course now.

### 2. The Act's Residency Requirement Does Not Intrude Upon the Relationships Between ERISA-Covered Entities

SIIA's next contention is that the Act's limitation of the tax to claims paid on behalf of Michigan residents effectively alters the relationship between plan administrators and plan beneficiaries because the requirement forces the administrators to collect additional information from beneficiaries. We disagree.

Under Michigan law, an individual is a Michigan resident if the individual considers the State her domicile. Mich. Admin. Code R. 550.404(1). Domicile, perhaps problematically, is a subjective determination. R. 550.404(2). SIIA fears that administrators will need to ask a beneficiary which state she considers "her fixed, permanent and principal home" to comply with the Act, a change in their relationship and potentially burdensome in the aggregate. *Id.* If this were an accurate recitation of the current state of the law, we might be inclined to agree that the residency requirement alters the ERISA-covered entities' relationships in form, if not substance. But the same regulation that problematically defines residency also obviates the need for a carrier to communicate with the beneficiaries. Mich. Admin. Code R. 550.404(3) provides in full:

A rebuttable presumption shall exist that an individual's home address, as maintained in the ordinary business records of a carrier or third-party administrator, indicates the domicile of that individual under this definition. Example: An individual who is domiciled in Michigan, but attends college in another state, is a Michigan resident for purposes of the Act. If that individual obtains health services in Michigan while home between semesters, a "paid claim" for the performance of those services will be subject to the assessment under the Act.

By defining residency by reference to the administrators' already-existing business records, Michigan leaves the relationship between ERISA-covered entities untouched. As a result, we do not believe Congress intended ERISA to preempt the Act's residency requirement.[3]

### 3. Section 550.1733a Does Not Intrude Upon the Relationships Between ERISA-Covered Entities

SIIA finally argues that Michigan Compiled Laws § 550.1733a(2) necessitates that carriers and third-party administrators alter their relationship with ERISA-covered entities by mandating that carriers and third-party administrators collect the tax from the ERISA-covered entities. We disagree. Section 550.1733a(2) states: "[a] carrier or third party administrator shall develop and implement a methodology by which it will collect the assessment levied under [the Act] from an individual, employer, or group health plan, subject to [certain conditions]." Importantly, Michigan has interpreted this section of its statute to say "the collection of the assessment from these parties by carriers and third-party administrators is permissive." Mich. Admin. Code R. 550.402(1). Under this interpretation, § 550.1733a(2) does not force carriers and third-party administrators to change their plan documents. Therefore, there is no ERISA-preemption issue.

### B. "Refers To"

The Iron Workers Fund and the Trowel Trades Fund ask us to hold that the Act makes an inappropriate reference to ERISA-regulated employee benefit plans, triggering the operation of

---

[3]We recognize that each of the fifty states could enact similar taxes and that multiple states could potentially claim an individual, perhaps a student, as a resident. This scenario could be burdensome to ERISA-covered entities. This state of affairs, however, is hypothetical. We also note in passing that each of the fifty states has its own property, income-tax, and employment laws that act upon ERISA-covered entities and are not preempted. It is unclear whether these residency requirements would be any different.

§ 1144(a).  Regardless of the merits of this contention, there is a procedural problem:  SIIA has explicitly waived this argument.  Amici cannot revive it.

In its opening brief, SIIA forthrightly states that "[it] does not appeal the District Court's conclusion that the Act does not have a 'reference to' ERISA plans."  Appellant Br. at 28.  By conceding this issue, SIIA has waived it, which generally precludes us from considering the issue on appeal.  *See, e.g.*, *Demyanovich v. Cadon Plating & Coatings, LLC*, 747 F.3d 419, 434 n.6 (6th Cir. 2014); *Bickel v. Korean Air Lines Co.*, 96 F.3d 151, 153 (6th Cir. 1996).  Furthermore, we have stated that "[w]hile an amicus may offer assistance in resolving issues properly before a court, it may not raise additional issues or arguments not raised by the parties.  To the extent that the amicus raises issues or makes arguments that exceed those properly raised by the parties, we may not consider such issues."  *Cellnet Commc'ns, Inc. v. FCC*, 149 F.3d 429, 443 (6th Cir. 1998) (internal citations omitted); *see also New Jersey v. New York*, 523 U.S. 767, 781 n.3 (1998) (stating that courts "must pass over" arguments of amici that the named party to the case "has in effect renounced"); 16AA Charles Alan Wright et al., *Federal Practice & Procedure* § 3975.1 (4th ed. 2008) ("In ordinary circumstances, an amicus will not be permitted to raise issues not argued by the parties.").  Otherwise, outside parties could hijack litigation quite easily.  Therefore, to avoid this result, we hold that SIIA has waived this issue and, therefore, decline to consider its validity.

## IV.  CONCLUSION

For the above-stated reasons, we **AFFIRM** the district court's dismissal of SIIA's claims.